[Civ. No. 14037.   Second Dist., Div. Three.   July 27, 1943.]

LLOYD CORPORATION, LTD. (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, RACHEL BETHEL BURLESON et al., Respondents.

6

J. L. Kearney and Herbert S. McCartney, Jr., for Petitioners.

Everett A. Corten and Fred G. Goldsworthy for Respondents.

SHINN, Acting P. J.—Upon a hearing before the Industrial Accident Commission an award was made, which was confirmed on rehearing, in favor of the widow and daughters of Arthur A. Burleson, who was fatally injured in an explosion while working as a welder in the completion and bringing in of an oil well. The award was against State Compensation Insurance Fund, as insurer of the drilling contractor, Drilling and Exploration Company, and Zurich General Accident Liability Insurance Company, Ltd., insurer of Lloyd Corporation, Ltd., owner and operator of the well, upon findings that the contractor was the general employer and that Lloyd was the special employer of Burleson at the time of the accident. Zurich Company and Lloyd Corporation seek annulment of the award as against the former upon the ground that the evidence before the commission was insufficient to prove that the relationship of employer-employee existed as between Lloyd and Burleson.

The contractor agreed to do certain drilling and repair work upon two oil wells of the operator, was to receive a flat sum for rigging up and taking out its equipment, a stipulated daily rental for the equipment, and its payroll expenses in the work. The arrangement between the companies was one which called for a measure of collaboration in the work. The

wells had been drilled two or three years before and D. & E. was working under a contract of reemployment to do repair work on them at the time of the accident. The agreement, which was evidenced by a letter from the contractor to the owner, did not specify the repair work to be done. It does not appear that Lloyd had anything to do with this work, which consisted in part of further drilling, other than to direct D. & E., generally, as to the results to be accomplished. We have referred to the terms of the agreement and the nature of the work undertaken not because they are material to the questions to be decided, but only because they explain the relations between the two companies in the work and the fact that Lloyd had equipment of its own at the wells on which welding was sometimes required and which was entirely separate from the equipment furnished and used by D. & E. Burleson was in the employ of the contractor as a welder at wages of approximately $1.00 per hour; his services were furnished by the contractor to the operator to work upon the latter's equipment whenever requested, and for the time thus spent the contractor charged the operator $3.00 per hour, which covered Burleson's services, and a rental charge for the use of the contractor's truck and welding equipment, which Burleson used in his work.

The work on one of the wells had progressed to the point where it was being brought onto production. At the time of the fatal accident Burleson was in the cellar of the well, welding a riser nipple to a flange on the casing, the purpose of which was to extend tubing to the floor of the derrick where a ''Christmas tree'' was to be added for control of the well.

The commission was called upon to decide whether Burleson in this welding operation was in the employ of D. & E. exclusively or had been furnished by that company to Lloyd and was then also in the employ of Lloyd for the special purpose of doing welding on the latter's equipment. After reviewing extensive evidence addressed to this point, we conclude that it was sufficient to support the finding of a special employment.

D. & E. had a superintendent on the job who directed the work of the drilling crews and also Burleson's work as a welder when working for D. & E. Burleson's compensation was the same whether he was working for D. & E. or for Lloyd, but when he worked for the latter he kept his time

separate, which was billed to and paid by Lloyd at the rate we have stated. At these times he also turned in time cards to Lloyd, which were O. K.ed by the latter's foreman. His services on the day of the accident were billed and paid for in this manner. Lloyd kept a superintendent of its own on the job, who called for the services of Burleson when they were required by Lloyd. Under the superintendent was a foreman who conferred with him each day about the work to be done and carried out the instructions he received. On the day of the accident the foreman informed the superintendent that there was welding to be done, was advised that Burleson would be sent for, and Burleson shortly thereafter came to do the work. Burleson and the foreman brought up the welding truck, and at the foreman's direction Burleson made one weld in an oil line and did some work on bolts to fit the ''Christmas tree.'' The foreman and Burleson then talked to Lloyd's superintendent about welding the riser nipple and were told to ''get busy and get it done.'' After the cellar was tested for gas, the welding was undertaken and the explosion occurred. Burleson was an experienced welder, was given no specific instructions as to how to make any of the welds and needed none. Lloyd's foreman helped him in his work by measuring pipe, lining it up, and directing where welding was to be done. There was testimony that it is customary for the well owner to issue orders when the well is being brought in and to direct the manner in which the work shall be done, and that Lloyd, upon the occasion in question, was supervising the work of bringing in the well. There was further testimony that the welding which Burleson was doing at the time was a part of the bringing in of the well and that the superintendent of D. & E., although present while the well was being brought in, was there only part of the time, took no part in the work, and gave no orders as to how the well was to be completed. This, he testified, was because the work of bringing in a well is customarily under the direction of the owner.

A reasonable conclusion from the facts thus briefly stated would be that Burleson, immediately before and at the time of the accident, was subject to and was working under the directions of Lloyd. He was not receiving directions from D. & E. and was working on equipment which was being installed under the direction of Lloyd. The general purport of the testimony is to the effect that when Burleson was sent

to Lloyd, at the latter's request, he worked under Lloyd's direction, and that he was so working at the time of the fatal accident. During the times when he was working on Lloyd's equipment there seems to have been no division of authority and control over his work as between Lloyd and D. & E., although D. & E. might have had the right to recall him at any time. But even if there had been some division of authority and control, certainly that exercised by Lloyd was sufficient to make it jointly liable with the general employer, under the principles stated in *Dept. of Water & Power* v. *Industrial Acc. Com.*, (1934) 220 Cal. 638, 641 [32 P.2d 354], and cases there cited. (See also *Silberman* v. *Industrial Acc. Com.*, (1934) 21 Cal.2d 609 [134 P. 228].)

The award is affirmed.

Wood (Parker), J., and Bishop, J. pro tem., concurred.

Petitioners' application for a hearing by the Supreme Court was denied September 23, 1943.