[Civ. No. 14127. Second Dist., Div. Three. Nov. 5, 1943.]

LLOYD CORPORATION, LTD. (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, CELESTE WILSON et al., Respondents.

J. L. Kearney and Herbert S. McCartney, Jr., for Petitioners.

Everett A. Corten and Fred G. Goldsworthy for Respondents.

SHINN, Acting P. J.—Isaac F. Wilson was fatally injured by an explosion in an oil rig. The Industrial Accident Commission awarded his widow a death benefit against Zurich General Accident and Liability Insurance Company, Ltd., compensation insurance carrier of Lloyd Corporation, found to be the special employer; and State Compensation Insurance Fund, insurer of Drilling & Exploration Company, Inc., found to be the general employer of Mr. Wilson. Lloyd Cor-

poration and Zurich seek annulment of the award upon the ground of insufficiency of the evidence to prove (a) a special employment by Lloyd, and (b) dependency of the wife at the time of the injury.

D. & E. Company was under contract to do repair work on two oil wells of Lloyd, the owner, as ordered by the latter, was to receive its payroll expense and a flat per diem charge for use of its regular drilling equipment tools, and Lloyd was to furnish drilling mud and any other needed tools. The contractor was to do all work, including that required for the completion and bringing in of the well. Drilling for deepening of the well had been finished and work was in progress for bringing in the well at the time of the accident.

The first point brings in question the sufficiency of the evidence to prove that Lloyd had actual control of the workmen while the well was being brought in and at the time of the accident. The evidence was held sufficient to prove that fact in *Lloyd Corporation* v. *Industrial Acc. Com.* (1943), 60 Cal.App.2d 5 [140 P.2d 77], where an award was affirmed in favor of the widow and children of Arthur A. Burleson, who came to his death in the same accident, and it was held further that the measure of control by Lloyd there proved was sufficient to show a special employment of Burleson. From the record in the instant case, which is before us in response to the writ, we have reached a like conclusion as to the status of the decedent Wilson. He was a rotary helper on the D. & E. Company drilling crew, while Burleson was a welder. The evidence was not as specific as to the duties of Wilson as it was as to those of Burleson in the other case but, as we shall see, it was sufficient to support a finding that Wilson was under special employment to Lloyd.

The record shows that the fatal explosion occurred while Burleson was welding in the cellar of the well and while Wilson was under the derrick floor but above ground. Wilson emerged fatally injured and died two days later. No one was able to state just what he was doing but it is admitted that he was on duty with the rest of the crew and there was testimony that about an hour before the accident he and another employee had been helping Lloyd's foreman putting clamps on top of the "Christmas tree" under orders that were being given the foreman by Lloyd's production manager. Apparently he had no specific duties at the time but assisted, as other members of the crew did, as he was needed in the prog-

ress of the work. The real point is not that Wilson's injury did not arise out of and in the course of his employment but that he was not under the control or special employment of Lloyd at the time.

There was direct evidence that Lloyd had furnished and assembled a "Christmas tree" and lines to handle the flow of gas and oil, including a line for the pumping of oil into the hole to remove drilling mud. Installation of the equipment was within the duties of D. & E. Company and employees of both companies were engaged in that work. Lloyd's production manager and foreman were on the job and giving orders. None were being given by D. & E. Company or its employees. This was by common consent and understanding, although not under express agreement. While D. & E. Company paid the wages of its crew and had to complete the work in which the crew was engaged, there was direct evidence that control of the workmen, who were installing Lloyd's equipment and had started the mud pump, was actually with Lloyd. The D. & E. crew was not engaged in any work other than that pertaining to the bringing in of the well, and the natural inference would be that Wilson was on duty and prepared to assist in the only work that was under way, which would place him under Lloyd's control. The evidence of the existence of a special employment was substantial. (*Lloyd Corp.* v. *Industrial Acc. Com.*, *supra*, 60 Cal.App.2d 5.)

Petitioners' attack upon the finding that Mrs. Wilson was wholly dependent for support upon her husband also is untenable. The presumption that she was so dependent is conclusive if she was living with him at the time of his injury or if he was then legally liable for her support (Lab. Code, sec. 3501(a)). The finding should be construed as implying that both grounds of dependency existed.

The evidence was sufficient to prove that the parties were living together as husband and wife. It is true that Mrs. Wilson sued for divorce in Ventura County March 11, 1942, and was given an interlocutory decree on the following day. The parties had entered into a property settlement agreement on March 10, 1942, under which their property was divided, Mr. Wilson paid his wife $550 and was to pay her in addition $1,320 at the rate of $55 per month, and Mrs. Wilson released her husband from the obligation of support. It is also true that they "separated" on March 10, that is to say, they slept in separate rooms in the same apartment for two nights. But

Mrs. Wilson had told her husband after she brought suit, in reply to his suggestion that they had acted hastily, that they would have a year to think it over before a decree would become final, and they apparently had not agreed upon a permanent separation. Their married life had not been unruffled and it would seem that Mrs. Wilson considered an interlocutory decree as something that might prove handy in an emergency. However, on the evening of the 12th, after satisfying the court that there had been a separation and that she had a cause of action for divorce, Mrs. Wilson accepted her husband's invitation that they have steaks for dinner and they spent the night together. On the following day they drove to Los Angeles, bringing some household furniture and personal belongings. Mrs. Wilson was established in an apartment which they had previously rented and continued to live there while Mr. Wilson resumed his work at Ventura. Thenceforth until the time of his injury, April 28th, Mr. Wilson came to Los Angeles every week or ten days to be with his wife, spent the night with her and returned to Ventura the following morning. Upon one occasion they spent two days together. During this six weeks period the relations of the parties were the usual ones of a husband and wife living under such circumstances. Mrs. Wilson kept house, prepared meals and laundered clothes which her husband brought to the apartment. Mr. Wilson made payments on furniture which they purchased, paid his wife's medical bills, gave her money and on two occasions sent money from Ventura. He purchased the necessities of life so as to meet their requirements. His total contributions for these purposes was about $115. His last trip to Los Angeles was during the week before his injury. Mrs. Wilson testified that he expressed an intention to move to Los Angeles and to make his home with her. We must presume that the commission believed that the parties resumed their relations in good faith. In this view of their conduct, which is altogether reasonable, there was ample evidence to support the implied finding that if there had been a bona fide separation there had also been a reconciliation, from which it would follow that they were living together as husband and wife.

The conclusive presumption of dependency arising from the existence of a legal liability of a husband to support his wife is, of course, independent of the one we have discussed. A husband's obligation of support is suspended while

his wife is living separate from him by agreement (Civ. Code, sec. 175), but the resumption of marital relations, following a reconciliation, cancels the executory obligations of separation agreements (*Mundt* v. *Connecticut Gen. Life Ins. Co.* (1939), 35 Cal.App.2d 416 [95 P.2d 966]). Mrs. Wilson's right to support, which she had surrendered by agreement, was restored by the reconciliation and the resumption of marital relations. The truth of this statement does not depend upon, but it is fortified by, the nature of the technical separation. Dependency was sufficiently shown by the proof as to the conduct of the parties, as the resumption of marital relations revived Mr. Wilson's liability for support.

Certain additional facts, namely, that the interlocutory decree did not provide for Mrs. Wilson's support, that Mr. Wilson made one payment of $55 under the agreement, and that Mrs. Wilson claimed and received from Mr. Wilson's estate the unpaid balance to which she was entitled under the agreement, do not militate against our conclusions.

The fact that Mr. Wilson made one payment on the agreement after the reconciliation would indicate that he regarded his obligation to pay the full amount as one which pertained to the division of property, which had been fully executed by Mrs. Wilson. He did not seek to obtain credit on the debt for sums which he voluntarily paid for Mrs. Wilson's support. The conditions which governed in the determination of the question of dependency were those which existed during Mr. Wilson's lifetime. By his will he left nothing to his wife. She was willing to accept the balance of the sum specified in the agreement, and the estate was willing to pay the amount, in lieu of any interest she might have had if the agreement had been rescinded. We cannot see that the manner in which Mrs. Wilson settled with the estate bears in any way upon the facts which controlled in the matter of dependency or that it was relevant to that issue.

The award is affirmed.

Wood (Parker), J., and Bishop, J. pro tem., concurred.