[Sac. No. 309. Department One.—October 8, 1897.]

In the Matter of the Estate of LAVINA JONES, Deceased. CADWALADER JONES, Appellant, v. MINNIE MAY LAMONT et al., Respondents.

HUSBAND AND WIFE—AGREEMENT FOR SEPARATION—RELEASE OF RIGHT OF SUC-CESSION. — An agreement for separation between a husband and wife, made in pursuance of a compromise of an action for a divorce, pro-viding for a division of property between them, and containing a mutual release "from all obligations for the future acts and debts of each other," and an individual release each to the other from the then existing debts and obligations of each, but not containing a release, in terms, by either one, of claims upon the future acquisi-tions of the other, nor, in terms, any release by either one upon the estate of the other in case of death, does not amount to a waiver or release by either of the right to succeed to all or any portion of the other's estate.

ID.—ESTATE OF DECEASED PERSON—APPEARANCE OF ATTORNEY.—In a proceed-ing for a distribution of such a wife's estate, instituted by the hus-band, and on the appeal from the decree therein, the public admin-istrator, as administrator of her estate, who made and had no claim upon the estate beyond his commissions, was not an adverse party, nor a necessary party to the appeal, and the attorney who appeared for him in the general proceedings of the administration had a right to appear as attorney for the husband in the proceeding for a distribution.

APPEAL from a judgment of the Superior Court of Sacra-mento County distributing the estate of a deceased person. Matt F. Johnson, Judge.

The facts are stated in the opinion.

C. H. Oatman, for Appellant.

James O. Prewett, for Respondent.

CHIPMAN, C.—Appeal from decree of distribution. The controversy arises out of a certain contract of separation between deceased in her lifetime and her surviving husband, appellant. The court found that the husband had no interest in the wife's estate, she having died intestate. The court also found that shortly prior to May 29, 1884, the said deceased commenced an action against her said husband for divorce and division of the property; that a compromise was agreed to on said day last named, pursuant to which the agreement in question was entered into

and the suit for divorce and division of the property was dismissed; whereupon the parties separated, and so continued, holding no communication as husband and wife until her death, November 3, 1895. The appeal is on the judgment-roll presented by bill of exceptions.

The sole question presented by appellant is, "whether or not the separation agreement in question amounts to a waiver or release by appellant of his right to succeed to all or any portion of his wife's estate."

The agreement is as follows:

"This agreement, made the 29th day of May, 1884, between Cadwalader Jones, of Sutter county, California, the party of the first part, and Lavina Jones, his wife, of the same place, the party of the second part, witnesseth, that whereas differences have arisen between said parties, and they have agreed to live separate and apart from each other,

"Therefore it is agreed by said first party that said second party shall receive from the sale of the homestead of the parties hereto the sum of $2,850, and one-half of the net proceeds of all the personal property belonging to said parties, and one bay mare named Kittie, and that said second party shall be released from every and all obligations of every kind and character, and shall not be held liable for any of the debts of said first party.

"In consideration whereof, said second party agrees that she accepts in release and full payment from said first party the foregoing sum of money, for any and every demand, claim, obligation, debt, and liability, and does by these presents agree to release him, said first party, from all and any debt which she may now owe, or which may hereafter be contracted by her.

"And it is expressly understood and agreed by both parties hereto that each party is hereby released and absolved from all obligations and liability for the future acts and debts of each other, and that said first party shall retain and have one bay filly, Daisy, and that the remainder of said personal property shall be sold at auction within three weeks from this date, and that on the day of the sale the auctioneer shall divide the net proceeds of such sale equally between said first and second parties."

The agreement seems to be an attempt to make an equal division of the property, including the homestead. There is a mutual release "from all obligations and liability for the future acts and debts of each other"; there is also an individual release each to the other from the then existing debts and obligations of each. There is no release in terms, by either one, of claims upon the future acquisitions of the other, nor, in terms, any release by either one upon the estate of the other in case of death. In *In re Davis*, 106 Cal. 453, the agreement read that the wife "does relinquish and surrender forever all claims of any nature she may now or hereafter have against any property that said W. W. Davis may now have or may hereafter in any manner acquire." And it was held that "the wife contracted away her inheritable interest in her husband's property." Here were apt words importing an intention never to assert in any way any right to the property of the husband, present or future. No such intention can be derived from the language of the contract before us on the part of either one of the parties to it. It is urged that this intention may be found in the situation of the parties at the time; that a divorce suit was pending, in which a division of the property was asked, and that the contract was the result of a compromise of that suit; that the divorce, if granted, might have given the wife all the property conveyed by the contract, free from all claim of the husband. While the law permits divorce, and also permits separation under articles affecting the property, it does not encourage the one more than the other, nor, in fact, either. We cannot see that the dismissal of the divorce suit affected the contractual relations of the parties to the contract subsequently entered into. They may, upon reflection, both have regarded that proceeding as a mistake and ill advised, and without adequate cause; the contract is sufficiently clear to speak for itself; the divorce proceeding is not referred to in the contract, and even the existence of unhappy differences therein referred to was not essential to its validity. (Civ. Code, sec. 159.) The contract in nowise affected the marriage *status*; the parties remained husband and wife. The utmost that the law permits is that they may agree to live apart, and may make a valid contract as to their property, but this may be terminated

at any moment by reconciliation which "would avoid the contract —as to all features,- at least, remaining executory." (*Sargent v. Sargent*, 106 Cal. 541.) We do not think the courts should come to the aid of these contracts so as to deprive either the husband or wife of the property rights growing out of the married relation, except where there is a clear and unmistakable intention to barter away such rights. Even where "unhappy differences" exist, it is quite consistent with the separation to so divide the property that in the event of death the statute of succession and descents shall control its devolution. That there was an intention in this case to defeat the law of inheritance, or to waive its beneficial provisions, we do not think can be ascertained from anything in the contract, or from any extrinsic facts before us.

If this contract is to be construed as an equitable assignment of the husband's interest in the wife's estate, it falls short of accomplishing this object. To effect such result, "there must be on the face of the instrument expressly, or collected from its provisions by necessary implication, language of present transfer applying directly to the future as well as the existing property, or else language importing a present contract or agreement between the parties to sell or assign the future property." (3 Pomeroy's Equity Jurisprudence, sec. 1290.)

We have examined the cases relied upon by respondents. They are *Labbe v. Abat*, 2 La. 553; 22 Am. Dec. 151; *Bratton v. Massey*, 15 S. C. 277; *Dillinger's Appeal*, 35 Pa. St. 357; *Hitner's Appeal*, 54 Pa. St. 110; *Wallace v. Bassett*, 41 Barb. 92; *Rains v. Wheeler*, 76 Tex. 390; *Scott's Estate*, 147 Pa. St. 102. We do not feel called upon to point out wherein the essential features of these cases, and the contracts under which they arose, are divergent from the case before us. Suffice to say that they are plainly distinguishable from this case. They apply to cases such as *In re Davis, supra*, and to other cases cited from our own reports in the well-considered opinion of Mr. Justice Van Fleet filed in the Davis matter. But, rightly interpreted, they only emphasize the importance of holding strictly to the views we have endeavored to briefly present. In *Scott's Estate, supra*, most relied upon by respondents, the language is, "forever discharge the said John Scott, his executors, administrators, etc., from all lia-

bility to said Olivia R. Scott other than that assumed by him in this contract; and they also release, acquit, and discharge the said John Scott from all duties, liabilities, and obligations of every kind whatsoever, which otherwise she, the said Olivia, might or could claim under or by virtue of the marriage relation between her and the said John Scott." Here were apt words to show an intention to exclude Mrs. Scott from sharing in the distribution of the husband's estate, and to release her inheritable interest therein. But there is no approach to equivalent provisions in the contract involved in this controversy.

2. In their reply brief respondents raise the question that the attorney for appellant, Mr. C. H. Oatman, had no right to act as such, for the reason that he was previously, and is still, the attorney for the administrator.

We do not think the public administrator, making or having no claim upon the estate beyond his commissions, and not having filed the petition for distribution nor taken part at its hearing, was an adverse party within the meaning of this section. (*Senter v. De Bernal*, 38 Cal. 637.) Neither was he a necessary party to the appeal. It has been several times held that he cannot appeal from an order of distribution. (*Bates v. Ryberg*, 40 Cal. 463; *Estate of Wright*, 49 Cal. 550; *Estate of Marrey*, 65 Cal. 287.) He is not "an aggrieved party" who has the right of appeal under section 938 of the Code of Civil Procedure. (*Goldtree v. Thompson*, 83 Cal. 420.) He is there spoken of as an indifferent person between the real parties in interest. (See, also, *Estate of Welch*, 106 Cal. 427.) As to the relation of the administrator to the estate see *Roach v. Coffey*, 73 Cal. 281, and *Rosenberg v. Frank*, 58 Cal. 420. The reasons given why an administrator may not appeal from a decree of distribution are equally persuasive against his right to be heard, either voluntarily or involuntarily, as respondent, and also as to his being a necessary party to the appeal.

Whether an attorney, who is attorney for an administrator, may act for one of the heirs as against other heirs, in an adversary proceeding relating to the property of the estate, is a question which would depend upon the circumstances of the particular case. We can conceive of situations where it might be improper—for example, where the administrator is an heir at law—but in the case here no disqualifying relation is shown between

attorney and client.   Furthermore, it does not appear that the administrator took any part or appeared by attorney or otherwise in the proceedings for distribution, and at that hearing no objection was made to Mr. Oatman's appearance in any capacity.

The judgment should be reversed.

Britt, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.

Harrison, J., Van Fleet, J., Garoutte, J.