[Civ. No. 13501.   Second Dist., Div. Three.   Sept. 3, 1942.]

MARY ELIZABETH PLANTE, Appellant, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association) et al., Respondents.

Ernest P. Morgan, V. A. Morgan, H. M. Lineman and Mab Copland Lineman for Appellant.

L. H. Phillips for Respondents.

SCHAUER, P. J.—This appeal is taken upon the same reporter's transcript as that filed in *Plante v. Plante*, Civil No. 13502, opinion in which has been this day filed and which is reported *ante* at page 318 [128 P. (2d) 787].   Refer-

ence is made to that opinion for the facts showing the relationship of the parties and the basis of this litigation generally. In this case the appeal is taken from a judgment for defendants declaring a construction adverse to plaintiff of the property settlement agreement executed by plaintiff and her former husband, Joseph H. Plante, now deceased, and denying to plaintiff specific performance of the agreement according to her interpretation of it.

The agreement was executed May 12, 1933, by plaintiff and her then husband while they were living separate and apart. It provides, in part, as follows: "1. That all property of any kind or description now owned and possessed by the parties hereto, or either of them, is community property, and it is agreed that concurrently with the execution of this agreement the title thereto shall, by proper conveyance, be vested in the parties as their sole and separate property, respectively, each to receive and have an undivided one-half interest therein, except as is herein otherwise specifically provided.

"2. That First Party shall relinquish to Second Party all management and control over the community property herein set out as follows, to-wit:

"18-Unit Bungalow Court at 650-686 Echo Park Avenue, Los Angeles, California.

"2-Unit Property, located at 632 Echo Park Avenue, Los Angeles, California.

"4-Flat Building, located at 656-658 LaVita Terrace, Los Angeles, California.

". . . Second Party shall manage said property to the best of her ability and with due regard to the careful and prudent control and direction thereof, and shall receive therefor the sum of Fifty Dollars ($50.00) per month. . . .

"4. That the income derived from said property shall be disbursed as follows, in the order herein set forth, to-wit:

"(a) A competent bookkeeper approved by both parties shall be employed, whose salary shall be paid therefrom.

"(b) Maintenance and other incidental upkeep necessary for the proper preservation and management of said property.

"(c) The sum of Fifty Dollars ($50.00) per month as salary to Second Party, or her successor, as aforesaid.

"(d) The sum of Seventy-five Dollars ($75.00) per month to First Party for his maintenance and support to be deposited to his credit in such place in Los Angeles as

he may direct, said sum to be paid to First Party so long as he lives, or until said property is sold, or until such time as by mutual consent this Agreement is terminated.

"(e)  The necessary premiums to keep in force that certain Life Insurance Policy now carried by First Party upon the life of his father. In this connection it is agreed that all sums derived from said insurance policy shall be deemed to be the community property of the parties hereto and shall be disposed of and distributed in like manner as is herein provided for disbursement of proceeds from the sale of real property.

"(f)  Sinking fund necessary to pay all interest charges, taxes or assessments against said property in a total sum of not less than an average of not less than Three Hundred Forty-one Dollars ($341.00) per month, provided such sum is available over and above the foregoing items.

"(g)  The sum of Seventy-five Dollars ($75.00) per month to Second Party for her maintenance and support. If sufficient funds are not available for payment of this amount, then second party shall be credited with the difference between the amount actually received and the sum of Seventy-five Dollars ($75.00) per month, the difference to be paid when sufficient funds are available, and in any event to be ultimately paid from the proceeds of the sale of said property.

"(h)  The remaining income, if any, to be divided equally between the parties hereto. . . .

"7.  It is agreed that in the event of the sale of any or all of the said real property above mentioned *is* herein contemplated, that then and in that event, the proceeds of said sale shall be disbursed and distributed as follows, and in the order herein named, to-wit:

"(a)  All expenses of sale shall be first paid.

"(b)  All deficits or sums due or owing to either of the parties under this agreement.

"(c)  The sum of Two Thousand Dollars ($2,000.00) to William R. Marshall, brother of the Second Party, now due and owing to him on account of money loaned, and the sum of One Thousand Dollars ($1,000.00) to Matilda Horne, foster sister of the Second Party, now due and owing to her on account of money loaned.

"(d)  All remaining sums to be divided equally between the parties hereto.

"8. It is hereby mutually agreed that in the event of the death of either party hereto, all of his or her right, title or interest in or to all of the community property of the parties shall vest in the survivor. In the event First Party survives Second Party, there shall be paid as soon as possible after the death of Second Party, the sum of Five Thousand Dollars ($5,000.00) in cash to William R. Marshall, the brother of the Second Party, and in the event Second Party should survive First Party, then she shall and hereby agrees to pay such sums as may be necessary for the maintenance, support and care of Moise Plante, father of First Party, during his lifetime. In order to make effective the provisions of this Agreement in this paragraph set forth, the parties and each of them agree to and shall make and keep in force and effect, a last Will and Testament, containing the necessary provisions to carry out the purpose hereof.

"9. First Party hereby agrees to quitclaim all of his right, title and interest in that certain real property situated at San Fernando, County of Los Angeles, State of California, now held in the name of the Second Party, to the Second Party, and the same shall become the sole and separate property of Second Party. . . .

"10. . . . nothing contained herein shall prejudice the rights of either party to proceed with an action for absolute divorce in the future. . . .

"13. Second party hereby transfers and assigns to First Party all of her interest in that certain automobile now possessed by the parties hereto. . . .

"14. This Agreement is complete in itself and embodies all agreements and understanding between the parties. . . ."

Apparently acting upon their understanding of the import of the agreement plaintiff and Mr. Plante contemporaneously with execution of the agreement executed deeds by which each quitclaimed to the other an undivided one-half interest in the real property described in paragraph 2 of the agreement. Such deeds contain the following clause: "This deed is given to carry out the mutual agreement of the parties hereto, that said property shall become vested in the Grantee as the grantee's sole and separate property, free from all interest, title or claim of the grantor now existing or which may hereafter exist by reason of the marital relation of said parties; and is so accepted by said grantee." There were furniture and furnishings in the buildings on the

deeded premises but no bill of sale or separate conveyance thereof was made.

Likewise each of the parties to the settlement contract, under date of May 15, 1933, executed a will. The substance of plaintiff's will of that date is, "I give and beque*st* all my belongings & Real Estate I may possess to my husband Joseph H. Plante, except five thousand dollars ($5,000.00) out of my estate which I give to my brother William R. Marshall. . . ." The substance of Mr. Plante's will of the same date is, "I give and beque*st* all my belongings to my wife Mary Elizabeth Plante, except $5,000.00 Five Thousand Dollars I give to William Marshall my brother-in-law . . ., also request my wife to give my father Moise Plante, if living, a fair sum of money . . . for his living expenses. . . ."

Mr. Plante secured a divorce from plaintiff in 1939 and married the defendant Pearl A. Plante. He thereafter executed a will bequeathing all of his property to his wife Pearl, the defendant herein, and such will, over plaintiff's contest, has been admitted to probate. Plaintiff, however, through the medium of this action, seeks to have it declared that by virtue of the provisions of paragraph 8 of the property settlement contract above quoted she is entitled to succeed to all the estate of the decedent and to have the contract, as so construed, specifically enforced against the surviving spouse and the special administrator.

██ The trial court found that the provisions of paragraph 8 were applicable only to *community property of plaintiff and Mr. Plante* held to be possessed by them *in community interest at the time of his death.* It held that the real estate which had been the subject of the quitclaim deeds not only became the separate property of the parties in undivided one-half interests as provided in the deeds, but that it was not within the category of property intended to be subject to the obligations imposed by the paragraph under discussion (No. 8). It found that only the furniture and furnishings in the buildings on the premises, so far as still owned by plaintiff and decedent, were community property of such parties and were subject to the operation of the paragraph noted. We do not find the above-mentioned holdings tenable.

The reasons for our conclusions become apparent upon a closer scrutiny of the material provisions of the property settlement contract. Paragraph 8 of that agreement provides the principal basis for this law suit. It is upon that

paragraph that plaintiff chiefly relies for enunciation and evidence of the obligation which she says bound Mr. Plante to leave all of his property to her and which she seeks here to impose upon his estate and against his personal representative and surviving spouse. In construing the contract we cannot permit equitable considerations or possible apparent injustice to the defendant widow to cause us to write into the agreement provisions which are not there or to delete any which the parties placed there. We find that the language used in that paragraph, when considered in connection with the remainder of the document, the other instruments contemporaneously executed, and the circumstances of the parties, leaves no doubt that plaintiff and Mr. Plante intended that the survivor of them should be entitled to succeed to ownership of whatever interest of the decedent, in that which had been their community property, was retained and possessed by him or her at the time of death.

They approached their property settlement contract as marriage partners who had found at least some of the incidents and elements of that relationship intolerable. They had been man and wife for about twenty-five years but were living separate and apart; one of them had on file an action seeking a divorce from the other; they had accumulated at least three parcels of income-producing property of substantial value but they also were faced with substantial obligations respecting the same and they had had difficulties regarding the management of such property. The plaintiff here was desirous of securing the payment of certain sums to her brother and to her foster sister and Mr. Plante was concerned that his father be supported. They started their effort for contractual adjustment with the declaration of the basis that all of the property possessed by them or either of them was held in community tenure. Their first concern, as expressed in paragraph 1 of their contract, was to entirely eliminate the community character of such tenure and make their respective interests sole and separate.

There has been some discussion in the briefs as to the meaning of the exception stated in the last clause of the paragraph above mentioned, the appellant contending, in effect, that such clause modifies the words "sole and separate property" and that the import of the paragraph is that the community property interests of the parties were

to become separate interests "except as is herein otherwise specifically provided."

In our opinion the provision "except as is herein otherwise specifically provided" plainly modifies the phrase "each to receive and have an undivided one-half interest." Obviously the purport of paragraph 1 is a declaration that all property then possessed by the contracting parties or either of them was, for purposes of the settlement, to be deemed community in character; that the title to all such property was to be so conveyed and vested by appropriate instruments that there would no longer be any community estate but on the contrary each party would hold his or her interest, as stated in the quitclaim deeds, "as the grantee's sole and separate property, free from all interest, title or claim of the grantor now existing or which may hereafter exist by reason of the marital relation of said parties"; that in making such adjustment and disposition of all the property of the parties the titles would be so conveyed and vested that each party would "receive and have an undivided one-half interest" in each parcel or item of property "except as is herein otherwise specifically provided." Two exceptions are specifically provided for in the agreement; i. e., a certain parcel of land in San Fernando and an automobile. Paragraph 9 obligates Mr. Plante to quitclaim "all of his right, title and interest in that certain real property situated at San Fernando . . . now held in the name of Second Party, to the Second Party, and the same shall become the sole and separate property of Second Party," and in paragraph 13 it is provided that "Second Party hereby transfers and assigns to First Party all of her interest in that certain automobile now possessed by the parties hereto. . . ." With those two exceptions the contract plainly contemplates that the parties shall become *tenants in common* (or joint tenants) of all other property, both real and personal, then possessed by them or either of them. It might seem that the creation of joint tenancies with the right of survivorship would have been more convenient and expedient to the ends sought by the contract but the fact that tenancies in common were created by the deeds which were executed does not alter the meaning of the language used in the disputed paragraph.

The contract obviously was drawn while the property of the parties was community in character. It was contemplated that on execution of that contract, together also with the

deeds therein called for, the property interests of the parties should become separate, but until the execution of such documents *all* the property possessed by the parties, or either of them, was their community property and obviously it was known to and identified by them as their community property throughout the pages of their contract. They knew what property they referred to as community property in paragraph 1 of that contract; they particularly identified certain of that same community property in paragraph 2; the same property was referred to in paragraphs 4 and 7, and we have no doubt that likewise it was the same property which they were contemplating in paragraph 8. We do not in fact view the language of that paragraph as being inconsistent with the transition of tenure called for by paragraph 1. Paragraph 1 provides that *the community property* shall be so conveyed that its title shall be held (with the two exceptions previously noted) in separate but undivided one-half interests. Paragraph 8 (which of course became a part of the parties' contract at the same instant as did paragraph 1) has reference to that *same community property* but specifically deals with the *separate interests in that property* which were created by the transition contemplated. Paragraph 8 does not state that the *community interest* of a party in any property shall vest in the survivor; it does declare that "in the event of the death of either party . . ., *all of his or her right, title or interest* in or to all of the community property of the parties shall vest in the survivor." It is our opinion that the words "community property of the parties" are used in that sentence to designate exactly the same property which is declared in paragraph 1 to be community property and that the phrase "all of his or her right, title or interest" was used to designate the interest in such property which would be acquired by the respective parties by operation of the contract and upon execution of the deeds pursuant to its provisions. The execution by the parties of the wills of May 15, 1933, is consistent with the view above expressed.

Appellant asks that we direct the trial court to enter judgment in her favor. There is substantial evidence tending to show that plaintiff violated the terms of the settlement contract on various occasions and in grave respects. There is also evidence that subsequent to execution of the agreement but prior to procurement of the decree of divorce, plaintiff and Mr. Plante became reconciled and resumed cohabitation

for a period. Whether the contract was abrogated when the parties became reconciled and resumed cohabitation (see 13 Cal. Jur. 848; *Peters* v. *Peters,* (1936) 16 Cal. App. (2d) 383, 387 [60 P. (2d) 313]) and, if not, whether in equity plaintiff may or may not be entitled to specific performance in the light of all the evidence which may be adduced on another trial we cannot now determine. Although the construction which we place upon paragraph 8 of the contract necessitates a reversal of the judgment we find the record to be such as does not warrant a directed judgment.

The judgment is reversed.

Wood (Parker) J., and Bishop, J. pro tem., concurred.