[Civ. No. 14726. Second Dist., Div. Two. Mar. 29, 1945.]

MARY ELIZABETH PLANTE, Respondent, v. PEARL A. GRAY, Individually and as Executrix, etc., Appellant.

L. H. Phillips and Rollin L. McNitt for Appellant.

H. M. Lineman, Mab Copeland Lineman and Ernest P. Morgan for Respondent.

MOORE, P. J.—Plaintiff instituted this action for declaratory relief and for specific performance of a contract made with her husband for the management of their properties and the conversion of their titles. The case was appealed once before from a judgment adverse to plaintiff (54 Cal.App. 2d 326 [128 P.2d 791]). While the court there declared the meaning of controverted clauses of the contract, it denied judgment of specific performance because the record contained "substantial evidence" of plaintiff's having violated terms of the contract "on various occasions and in grave respects"; also, because there was some question whether the parties had abrogated their contract following their reconciliation. With the exception of some deleted passages the contract and other facts of the case will be found in that decision.

Suffice it to say here that after the parties had lived together for thirty years plaintiff brought suit against her husband for divorce. While that action was pending the parties executed the contract. Thereupon the divorce action was dismissed and the parties dwelled together in amity for about three years after which, because of differences growing out of disagreements concerning the management of their properties, Mr. Plante left his wife, obtained a divorce and married the defendant Pearl. Sometime after this marriage Mr. Plante deceased and his widow qualified as the executrix of his estate. She subsequently became Pearl A. Gray. As executrix and individually, Mrs. Gray appeals from the judgment rendered on the second trial, adjudicating that the properties described in the contract of plaintiff and decedent belong to Mary Elizabeth Plante and that appellant has no right or interest therein. For reversal she relies upon three propositions: (1) the findings of fact are not supported by the evidence; (2) the contract was abrogated by virtue of the reconciliation of Joseph and Mary Plante and their subsequent cohabitation and disregard of the contract; (3) respondent is not

entitled to a specific performance by reason of her breaches thereof.

By finding 13 it was determined that ". . . It is untrue that by reason of said reconciliation and subsequent cohabitation said agreement was voided or that it became of no further force or effect, and it was not the intention of the contracting parties at any time subsequent to . . . said agreement to abrogate or do away with the same and that said parties at all times relied upon said agreement and acted thereunder and in compliance therewith and at all times considered the same to be the measure and statement of their respective property rights and interests." It is now contended that this finding is not supported by the evidence. This attack will be considered in the light of the doctrine that a finding attacked will prevail unless there is an entire lack of substantial evidence in support thereof. (*Bellman* v. *San Francisco H. S. District*, 11 Cal.2d 576, 581 [81 P.2d 894].)

The proof in this case is that after the property settlement was agreed upon each of the parties kept his own copy. Neither discussed a reconveyance of the property; neither suggested a cancellation of the contract. Not only did the parties live together for three years after their reconciliation, but thereafter when disagreements arose they submitted their dispute to the board of arbitration for which the contract had provided.*

The mere fact that respondent did not totally exclude decedent from participation in the management of the properties

---

*"3. In the event either party becomes dissatisfied with the management of the property by the one in control, then the dissatisfied party shall make application to the persons whose names are set out below, who shall constitute a Board of Arbitration, and the decision of said Board in any complaint laid before it shall be final and binding upon both parties hereto, and if upon a determination by said Board that the management by the party in control has, through any cause, failed to adequately manage and safeguard the property set out in paragraph 2, then such party shall relinquish the control and management of said property in the manner directed by the Board of Arbitration. The following persons shall constitute the above-described Board:

Maude Ewing, 2717 Gilroy Street, Los Angeles;

W. O. McCarthy, 1471 Bellevue Street, Los Angeles;

W. S. Cross, 1154 West 29th Street, Los Angeles;

in the event of such removal, or in the event of the voluntary relinquishment of said management by Second Party, either temporarily or permanently, Second Party shall receive the sum of not less than Seventy-five Dollars ($75.00) per month to be paid out of the income of said property by the party in control. Said party in control shall at all times be subject to the same conditions and restrictions in the handling of said property and the receipts and disbursements of moneys received therefrom as is more particularly set forth hereafter."

is not conclusive proof that they had abandoned the contract. Having her husband collaborate with her and sharing her responsibilities with him was normal and customary behavior toward a friendly spouse. But with both parties endeavoring to succeed with the more important phase of life, respondent retained her office as manager of the estate although decedent performed many essential tasks. In other respects both disclosed a fidelity to the provisions of the contract: they converted their titles from community ownership to cotenancies; after sale of a four-flat building they divided the proceeds; following disagreements they submitted their disputes to the board of arbitration. The conduct which gave rise to differences was itself an attempted performance of their agreement. Because decedent criticized respondent's methods and manner of execution or because she may in some particulars have violated the covenants to which she had pledged her faith, it cannot be said that the court erroneously found that the contract was binding upon both parties and that decedent intended that respondent should succeed to ownership of his interest in the properties described in the instrument of their joint creation. The language of the agreement, the relationship of the parties and their conduct following the reconcilation warranted the finding that the contract was not voided or abrogated and that both parties relied upon it and acted in compliance with it and considered it as a statement of their respective rights.

The contract of respondent and decedent was not arranged in order to effect a separation. It was made in contemplation of a resumption of the marriage relation and of a dismissal of the pending divorce action. They may have planned to avoid arguments concerning a division of revenues or of property under all circumstances, but that purpose did not alter the nature of their agreement. The law permits husband and wife to contract for a "marriage settlement." (Civ. Code, § 178.) Such a contract is made so that the parties may live separate, and may be terminated by a reconcilation which avoids such portions of the contract as may remain executory. (*Jones* v. *Lamont,* 118 Cal. 499, 501 [50 P. 766, 62 Am.St.Rep. 251].) However, the contract under consideration was not for a marriage settlement. Insofar as it related to the matrimonial relationship its aim was to rededicate the parties to the marriage status and to a life partnership in their properties. It is authorized by section 158, Civil

Code, which permits a married couple to enter into "any engagement or transaction" respecting property. As such a contract, it was not to be deemed abrogated by reconcilation and cohabitation. (*Estate of Brimhall,* 62 Cal.App.2d 30, 35 [143 P.2d 981].)

■ But viewing the contract as a "marriage settlement" it would not have been avoided by a mere reconcilation. Such result can flow only from a resort to some effective means clearly indicating the purpose of the parties to restore their respective properties to the *status quo,* such as destruction of the document containing their agreement, executing reconveyances, or restoring control to the one who formerly had exercise thereof. (*Brown* v. *Brown,* 170 Cal. 1, 7 [147 P. 1168]; *Estate of Martin,* 166 Cal. 399, 402 [137 P. 2]; *Jones* v. *Lamont,* 118 Cal. 499, 501 [50 P. 766, 62 Am.St.Rep. 251].)

■ No conduct of these parties discloses an intention to terminate their agreement. For the greater portion of three years they collaborated agreeably and in their subsequent strife they submitted their disputes to arbitration by a board of their joint choosing. Neither suggested a revestment of the properties with community title or a cancellation of the contract.

Further proof that decedent and respondent had no intention of ever abrogating the contract is found in the nature of the tenancy created thereby. But for the statute requiring a joint tenancy to be created by a "single will or transfer" (Civ. Code, § 683) the contract and the contemporaneous deeds would have created a joint tenancy. That in effect they achieved nothing short of a joint tenancy is emphasized by the authorities. ■ When two persons hold an estate jointly, sharing equally in its profits, increment, and losses while they live but passing the entirety thereof to the survivor upon the death of either, they are joint tenants. (14 Am.Jur. 79.)

■ Upon the decease of one of the tenants all rights of survivorship provided for by the instrument which created the joint tenancy become effective and title vests instantly in the survivor. (*Kennedy* v. *McMurray,* 169 Cal. 287 [146 P. 647, Ann.Cas. 1916-D 515].) ■ A joint tenancy is complete when there is a unity of interest, of title, of time and of possession. (*Wilkins* v. *Young,* 144 Ind. 1 [41 N.E. 68, 590, 55 Am.St. Rep. 162].)

■ Having declared that all of their property was community in the nature of its title and ownership, decedent and

respondent agreed to vest the title thereof in the two "as their sole and separate property, respectively, each to receive and have an undivided one-half interest therein except as herein otherwise specifically provided." After providing for the management of the property and the disposition of its income the contract continues: "(8) . . . That in the event of the death of either party hereto all of his or her right, title, or interest in or to all of the community property of the parties shall vest in the survivor." In addition to vesting the properties in the survivor, paragraph 8 likewise obligated each of the parties to keep in force a last will with "necessary provisions to carry out the purpose thereof" and paragraph 12 inhibited each from incurring liabilities against the other. Their mutual aims were molded into form by the prompt execution of reciprocal wills and by the steadfastness of each in not incurring debts against the other. If, therefore, a joint tenancy was not technically created yet the provisions clearly safeguarded equality in enjoyment of the estate while both should live and guaranteed the totality thereof to the survivor. (54 Cal.App.2d at p. 333.) This similitude of the tenancy of decedent and respondent to that of joint tenancy was an effective factor in inducing the finding (1) that the provisions of the contract are binding; (2) that decedent violated them by making a will on March 29, 1940, bequeathing a half interest in the properties described in the contract to appellant; (3) that respondent is entitled to all of such properties without administration.

There is still another feature of the contract which fortifies the finding of the trial court and the holding of this court on the former appeal. The contract makes no provision for its termination or for a forfeiture of the interest of either party. If no forfeiture is to occur by virtue of a provision of an agreement, surely none can be created upon the demand, and for the accommodation, of one of the parties. Equity abhors forfeitures and they will not be allowed so long as the party who deems himself to be aggrieved has a remedy by which he may be compensated for his loss. (Civ. Code, § 3369; *Ebbert* v. *Mercantile Trust Co.*, 213 Cal. 496 [2 P.2d 776]; *Ross* v. *McDougal,* 31 Cal.App.2d 114 [87 P.2d 709]; *Grimes* v. *Steele,* 56 Cal.App.2d 786 [133 P.2d 874].) The only "violations" of the contract whereby appellant seeks to avoid its effect are compensable in coin. In her brief appellant specifies 15 derelictions of respondent under the contract. Dece-

dent presented these to the board of arbitration. All but two relate to her alleged misappropriation of funds of the cotenancy or to her failure properly to apply certain of its funds to its properties. The other two were (1) her employment of two persons objectionable to decedent and (2) her failure personally to manage the properties. Any loss which decedent might have suffered by reason of any or all of such derelictions could have been ascertained and adjudged by a court of law. Forfeiture was therefore unavailable. (See Civ. Code, § 3275.) The parties having invested the properties with a title in a cotenancy circumscribed by inhibitions against a destruction of that tenancy, such investiture cannot be defeated after the cotenancy has been terminated by the death of one of the parties by the mere demand of the personal representative of such decedent.

 In view of the holding that the contract in suit was effective until respondent succeeded to the interest of decedent in the properties described in the contract by virtue of her survivorship, the third contention is disposed of by the observation that she did not forfeit her contract by appropriating moneys of decedent because they could have been recovered by a judgment at law without forfeiting respondent's rights in the contract. If the contract be deemed an arrangement for operating a joint adventure, none of the acts of respondent complained of would have warranted a forfeiture of respondent's rights under the agreement. If they were not forfeitable she is entitled to a specific performance. That decedent himself entertained no such purpose as that of obtaining a nullification of the contract is evidenced by his presenting all of his grievances against respondent to the board of arbiters immediately prior to his demise.

Judgment affirmed.

Wood, (W. J.), J., and McComb, J., concurred.