[Civ. No. 14745. First Dist., Div. One. Jan. 8, 1952.]

MELBA WALSH, Appellant, v. JOHN DENNIS WALSH, Respondent.

Phil F. Garvey and James A. Himmel for Appellant.

James A. Toner for Respondent.

WOOD (Fred B.), J.—Plaintiff appeals from an order denying her application for alimony, counsel fees, and costs, pending her action for divorce.

The question is whether or not the trial court abused its discretion in denying the application. Our review of the evidence convinces us it did not.

In her complaint, filed January 24, 1950, appellant stated that the parties were married February 9, 1948, and separated November 24, 1949, and that there was no community property. She did not therein ask for alimony, counsel fees, or costs pending the action. August 2, 1950, she filed an amended complaint in which she stated that the parties separated July 22, 1950; that there was community property of a nature and value unknown to her; that she was without sufficient means to maintain the action; that respondent received an income of $300 a month, and was able to pay her $350 for her attorney's fees, $50 a month for her support, and $50 for costs of suit, which she alleged were reasonable sums therefor.

It appears from the reporter's transcript that upon the hearing of an order to show cause why respondent should not be required to pay appellant costs, counsel fees and

support pending the action, respondent's counsel produced a document which he described as a property settlement agreement executed by the parties in January, 1950, and offered it to the judge for his consideration. Counsel for appellant stated he would show that the purported agreement was executed by appellant without independent legal advice and that the cohabitation of the parties subsequent to the filing of the original complaint had vacated the agreement. In furtherance of those purposes, he then asked appellant a series of questions concerning the circumstances under which she signed the agreement and concerning the asserted subsequent cohabitation. Questions along both lines were asked upon cross and redirect examination. Upon cross-examination she testified that she read the agreement before she signed it, and received the $404 (which the agreement provided that she was to receive). At the conclusion of the hearing, these questions were asked by the court and answers given by appellant: "Q. Did you read this before you signed it? A. I didn't know I was signing everything away. Q. Is that your signature (indicating)? A. Yes." The reporter's transcript does not include a copy of the agreement, nor does it indicate that the agreement was formally offered in evidence or marked as an exhibit.

In their briefs upon this appeal, the parties discussed the agreement and its legal effect, and whether or not it was abrogated by a reconciliation. Appellant in her opening brief said, "The trial court asked the appellant if she read the agreement"; and that "the trial court erred in basing its order on the *alleged property settlement agreement*," for the asserted reason, among others, that the agreement "was not properly in evidence." In her closing brief, she said, "The appellant has a right to assume that the trial Court erred in basing its order of [on] the nonexistent property settlement agreement, and the record justified this reason; true, it is meager, but it is the sole evidence that the trial judge erred upon . . ." Respondent then moved this court for augmentation of the record. ■ Upon the hearing of that motion, respondent produced a property settlement agreement dated January 16, 1950, between Melba Walsh and John D. Walsh, husband and wife, bearing penned signatures, "Melba Walsh" and "John D. Walsh," and certified by the judge who presided at the hearing of the order to show cause, as

the property settlement agreement which he read, referred to and considered as a part of said hearing. Respondent's counsel was sworn as a witness and testified that during the hearing below he presented a property settlement agreement for the consideration of the trial court and that the agreement just described is the document which he so presented, though he did not offer it in evidence. That document was introduced in evidence herein and the motion to augment granted, this court declaring that the document will be considered by the court upon this appeal.

It clearly appears that the property settlement agreement was considered by the court below. This brings it within the scope of rule 12 of the Rules on Appeal. Subdivision (a) of rule 12 declares that "the reviewing court . . . may order that the original . . . of a paper . . . used on the . . . hearing below and on file in or lodged with the superior court be transmitted to it . . . and when so transmitted . . . shall be deemed a part of the record on appeal." Subdivision (c) of rule 12 authorizes the reviewing court to "submit to the superior court for settlement any differences of the parties with respect to alleged omissions or errors in the record, and the superior court shall make the record conform to the truth." The purpose of augmentation is emphasized by the concluding recital in rule 5(f), "whenever it is necessary to prevent a miscarriage of justice," and by the presumption declared in rule 52 that, in the absence of proceedings for augmentation, the record "includes all matters material to a determination of the points on appeal." It is the duty of the reviewing court, "when it desires further knowledge upon any point, to augment the record before proceeding with its decision." (*Kuhn* v. *Ferry and Hensler*, 87 Cal.App.2d 812, 815 [197 P.2d 792].) The power to correct a transcript and make it "speak the truth still rests in the trial court even though an appeal from the judgment is pending. [Citations.]" (*Stevenson* v. *Fleming*, 43 Cal.App.2d 641, 643 [111 P.2d 420].) The document in question is properly before us for consideration upon this appeal.

Appellant objects to its consideration because it was not formally introduced in evidence and marked as an exhibit; i.e., that it was not "evidence" available for the consideration of the trial court. This point is without merit. Respondent produced the document and handed it to the trial judge for his consideration at the hearing. Counsel for appellant

interrogated his client concerning the circumstances of its execution and the subsequent conduct of the parties as bearing upon its implied cancellation. The court did consider it. Thus, it is clear that the offering party and the court understood it was in evidence, and that appellant treated it as if it were in evidence. Under such circumstances, the fact that the offer was not made in words expressly characterizing the offer as a formal tender of evidence does not deprive the document of its true character as evidence. The objection comes too late upon appeal. (See *Mann* v. *Mann*, 76 Cal.App. 2d 32, 41-42 [172 P.2d 369], and authorities cited.)

The property settlement agreement, now a part of the record upon this appeal, declares that the parties thereto, the appellant and the respondent herein, ''do hereby finally settle, adjust and determine their property rights of every nature and description and all the rights of said Melba Walsh, party of the first part [appellant], to alimony and support,'' and that ''Party of the first part agrees to and does hereby accept the sum of $404.50 as settlement in full of any claim she has, has had or may have against party of the second part [respondent] for alimony or support and as settlement in full for her interest in and to the community property belonging to the parties hereto; and claims for attorney fees and court costs. Party of the second part does hereby agree to pay to party of the first part said sum of $404.50 upon the execution of this agreement.'' Appellant testified that she read and signed this agreement, and received the $404.

 That agreement, if still in effect, amply supported the order appealed from.

Appellant claims the agreement had been abrogated by reconciliation and resumption of marital relations by the parties. The evidence thereof is not convincing, certainly not sufficient for a reviewing court to conclude as a matter of law that such a reconciliation and resumption of marital relations did occur subsequent to the execution of the agreement. Appellant testified that after November 4, 1949, when they first separated, she cohabited with her husband; that that continued until July 14, 1950, when they last lived together; that they were separated at the time of the agreement, when she was living with her sister, at California and Fillmore Streets; that she now (August 8, 1950) lives at the same place, in her own apartment, which she has had since July 6; before that she was living with her other sister

at a different place; that she and her husband were meeting at her sister's house and at appellant's other apartment on Bush Street; that she saw him once at her Bush Street apartment, on St. Patrick's Day, and once at her apartment on California Street, on a Friday after he came back from Catalina; that she had been with him on numerous occasions, and stayed overnight and had sexual intercourse with him on a number of occasions since November, 1949, at various places in San Francisco; and that her husband has been living with his mother on Balboa Street, has been staying there ever since the parties separated in November, 1949.

These facts do not compel the conclusion that appellant and respondent intended to and did effect a reconciliation and resumption of marital relations. As said by the Supreme Court in *Estate of Boeson,* 201 Cal. 36, at page 45 [255 P. 800] : "Giving the fullest effect possible to the facts testified to by appellant, it appears from her testimony that she and decedent had not established a matrimonial domicile at the residence owned by her or at any other place. The fact that decedent on occasions spent the night with appellant at said residence and upon occasions ate meals with her there and assisted her in making minor repairs about the premises does not establish said residence as the matrimonial domicile of the parties. In the course of her testimony appellant stated that decedent went to 'his house' and to 'his place,' thus showing that she did not regard her residence as a 'matrimonial domicile. While the lack of a fixed joint domicile will not under all circumstances prevent the existence of a state of marital cohabitation, it is a factor to be considered." "Mere copulation without occupying the same habitation and dwelling there as husband and wife is by no means sufficient to sustain such a conclusion [that the contract had been set aside]." (*Estate of Martin,* 166 Cal. 399, 402 [137 P. 2].) "The circumstances of reconciliation, however, must show that the parties intended to reunite as husband and wife; occasional cohabitation does not alone establish a reconciliation. (*Keller* v. *Keller,* 122 Cal.App. 712, 715 [10 P.2d 541]; *Ruggles* v. *Bailey,* 15 Cal.App.2d 555, 556 [59 P.2d 837].)" (*Estate of Abila,* 32 Cal.2d 559, 561 [197 P.2d 10].) Whether the parties in the instant case harbored such an intent and effected a reconciliation was a question of fact for the determination of the trial judge. The record, as we view it, supports an implied finding that no reconciliation was effected.

■ Appellant's counsel in his brief directs attention to the fact that at the hearing appellant testified that the agreement was made in the office of respondent's attorney; that at that time appellant was not represented by counsel and had no independent advice, was not advised as to her legal rights, and when she signed did not know that she was signing everything away. However, counsel does not claim that the agreement was invalid or ineffective for any of those or similar reasons. Instead, he contends that "any property settlement agreement made by these parties in the particular case was terminated and annulled by their action and conduct in resuming marital status." Nor did appellant by any pleading or motion, or otherwise, tender in the court below any issue concerning the validity or fairness of the agreement based upon alleged fraud, undue influence, or other violation by respondent of the fiduciary relationship in the making of the agreement. Under such circumstances, while it is true that a court may disregard an agreement of the parties which has been neither approved nor annulled by the court (*Steinmetz* v. *Steinmetz,* 67 Cal.App. 195 [227 P. 713], cited with approval in *Patton* v. *Patton,* 32 Cal.2d 520, 523 [196 P.2d 909]), it is equally true that the court may give due consideration to the provisions of the agreement when passing upon the merits of an application for alimony, counsel fees and costs.

■ The order appealed from is sustainable upon another ground. In an action for divorce, it is only money "necessary" for the support of a spouse, or for prosecution or defense of the action, which the court has discretion to award. (Civ. Code, § 137.) Although appellant's testimony that she had no money for her own maintenance, or for counsel fees or costs, would support a finding of need therefor, she furnished evidence from which an inference of lack of need could be drawn. The parties had been married but a short time. There were no children. She testified that she "worked all the time we were married." She did not say she was not now working (they were still married) or that gainful employment was not available, or that she was unable to work. Her original complaint contained no allegation of need of money for maintenance, costs or counsel fees. Her agreement of January 16, 1950, regardless of its effect or lack of effect as a waiver, furnished some indication that moneys for these purposes were not necessary. ■ In the absence of express findings "every intendment is in favor of the judgment or order appealed from and it is presumed that every fact or inference

essential to the support of the order and warranted by the evidence was found by the court." (*Estate of Rule,* 25 Cal. 2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319].)

We conclude that the trial judge exercised his judgment rightly and fairly, and committed no abuse of discretion.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.