[Civ. No. 25564. Second Dist., Div. One. Apr. 2, 1962.]

EVELYN S. TOMPKINS, Plaintiff and Respondent, v. CHARLES J. TOMPKINS, Defendant and Appellant.

Monta W. Shirley for Defendant and Appellant.

Stanley N. Gleis for Plaintiff and Respondent.

LILLIE, J.—Plaintiff and defendant were married in 1932; on December 4, 1957, they separated and plaintiff filed suit for divorce. On June 20, 1958, they executed a property settlement agreement declaring that they thereafter intended to live separate and apart; under its provisions plaintiff was deeded the family home valued at approximately $18,000 and waived her right to alimony, defendant retained his business and earnings. On August 27, 1958, plaintiff was granted an interlocutory decree of divorce approving the agreement. In October 1958, the parties reconciled, resuming marital rela-

tions, and lived together as husband and wife until October 17, 1959, when defendant told plaintiff he had on the night before committed adultery. Thereafter they made various motions in the pending divorce case. On January 14, 1960, the lower court found that the parties had become reconciled during the interlocutory period, and made its order granting plaintiff's motion to vacate and set aside the interlocutory judgment of divorce and dismiss the action, and denying defendant's motion for entry of final decree of divorce. No appeal was taken from this order and the same is now final. On December 10, 1959, plaintiff had filed a new complaint for divorce therein charging defendant with extreme cruelty and adultery, alleging certain community property—bank accounts, shares of stock and life insurance policies—and praying for the community property, reasonable support and attorneys' fees. Defendant answered denying the existence of any community property and, relying upon the property settlement agreement of June 20, 1958, alleged that plaintiff had therein waived alimony and was not entitled to further support. Based upon express findings that defendant was guilty of extreme cruelty and adultery on October 16, 1959, the trial court granted plaintiff a divorce and ordered defendant to pay $150 a month alimony for a period of *four years* and $750 on behalf of attorneys' fees. Defendant appeals only from that portion of the interlocutory judgment awarding alimony and attorneys' fees.

The lower court impliedly found that the executory provision of the property settlement agreement waiving alimony had been cancelled by subsequent reconciliation leaving it free to award future support. Appellant claims that the law requires more than a reconciliation to abrogate such an agreement and that the evidence is not sufficient to show that the parties intended to cancel the same, thus the court erred in awarding support in the face of the waiver. Appellant, relying on the agreement of June 20, 1958, does not seek the return of the family home but argues that it is inequitable to permit plaintiff to receive support while retaining the property.

At the outset we point out that the order of January 14, 1960, from which no appeal was taken and which is now final, established beyond contradiction here that the parties permanently reconciled in October 1958. This was conceded by appellant's counsel during the divorce hearing. Thus there is before this court no question concerning the fact of reconciliation.

In support of his argument that a subsequent reconciliation does not cancel a property settlement agreement, appellant takes advantage of certain gratuitous statements in cases which bear little or no resemblance to the one at bar, such as in *Walsh* v. *Walsh,* 108 Cal.App.2d 575 [239 P.2d 472]; *Patton* v. *Patton,* 32 Cal.2d 520 [196 P.2d 909]; and *Bluhm* v. *Bluhm,* 129 Cal.App. 546 [277 P.2d 421], in which the evidence did not show a reconciliation had in fact been effected; in *DeVault* v. *DeVault,* 90 Cal.App.2d 15 [202 P.2d 375], and *Beeler* v. *Beeler,* 125 Cal.App.2d 41 [269 P.2d 949], in which no issue of alimony was before the court; and in *Plante* v. *Gray,* 68 Cal.App.2d 582 [157 P.2d 421], which did not even involve an agreement made in contemplation of separation but, which nevertheless relates that such agreement ''may be terminated by a reconciliation which avoids such portions of the contract as may remain executory. (*Jones* v. *Lamont,* 118 Cal. 499, 501 [50 P. 766, 62 Am.St.Rep. 251].)'' (68 Cal. App.2d 582, 587.) ▮ The *Plante* case, *supra,* was cited in *DeVault* v. *DeVault,* 90 Cal.App.2d 15 [202 P.2d 375], which declared: ''Whether the parties intended to terminate the marriage settlement agreement was a question of intent. As to that issue, evidence of the resumption of marital relations, although material, is not necessarily conclusive. . . .'' (P. 16.) ▮ With this proposition we agree, for a reconciliation and a resumption of marriage relations are not always the same. A resumption of marital relations does not result in a reconciliation unless or until the parties mutually intend to reunite permanently as husband and wife (*Estate of Abila,* 32 Cal.2d 559 [197 P.2d 10]; *Nacht* v. *Nacht,* 167 Cal. App.2d 254 [334 P.2d 275]) and there is an unconditional forgiveness by the prevailing party. (*Angell* v. *Angell,* 84 Cal.App.2d 339 [191 P.2d 54].) Appellant also relies heavily on *Crossley* v. *Crossley,* 97 Cal.App.2d 627 [218 P.2d 132]. This case, definitely not controlling here, was distinguished by the court in *Purdy* v. *Purdy,* 138 Cal.App.2d 402 [291 P.2d 1005], at page 405, a case similar to the instant one: ''Appellant argues that reconciliation does not, of itself, abrogate a valid property settlement and cites *Crossley* v. *Crossley,* 97 Cal.App.2d 627 [218 P.2d 132], in support of this argument. However, in that case the appellant contended that the property settlement agreement involved was procured under duress; that it was discharged and cancelled by an executed oral agreement and that she was entitled to a share of the property acquired both before and after the

marriage. The court held that the findings which led to the judgment were supported by substantial evidence and were therefore conclusive on appeal. While the court there said that 'The fact, standing alone, that the husband and wife in this case resumed marital relations, does not terminate the property agreement,' the court did not hold that a bona fide reconciliation and resumption of the marital relations and privileges does not terminate the executory features of a property settlement agreement.''

It is clearly the rule that whether a property settlement agreement entered into in contemplation of separation thereafter continues in full force and effect depends upon the subsequent mutual intentions and understanding of the parties. Whether they have thereafter in fact abrogated the agreement is an issue of fact for the trial court to be determined from the facts and circumstances of each case (*Margolis* v. *Margolis*, 115 Cal.App.2d 131 [251 P.2d 396]; *Morgan* v. *Morgan*, 106 Cal.App.2d 189 [234 P.2d 782]), consisting generally of those acts and relations of the parties and conduct which justify the conclusion that they intended to put an end to their prior agreement and understood it thereby to be cancelled. (*Estate of Boeson*, 201 Cal. 36 [255 P. 800].) For instance, the resumption of marital relations, while a fact of material weight in arriving at such intent, is not alone conclusive on the issue. (*DeVault* v. *DeVault*, 90 Cal.App.2d 15 [202 P.2d 375]; *Margolis* v. *Margolis*, 115 Cal.App.2d 131 [251 P.2d 396]; *Plante* v. *Gray*, 68 Cal. App.2d 582 [157 P.2d 421].) However, a fact which alone supports an inference of intent to cancel, at least the executory provisions of a property settlement agreement, is a bona fide reconciliation. (*Morgan* v. *Morgan*, 106 Cal. App.2d 189 [234 P.2d 782]; *Purdy* v. *Purdy*, 138 Cal.App.2d 402 [291 P.2d 1005].) In the *Purdy* case, *supra*, the court stated the rule: ''It appears from the record that the parties became reconciled in March, 1952, and continued to live together until January, 1954. This reconciliation cancelled the executory obligations of the agreement of March 10, 1949. (*Lloyd Corp., Ltd.* v. *Industrial Acc. Com.*, 61 Cal.App.2d 275, 280 [142 P.2d 754].) As is said in *Harrold* v. *Harrold*, 100 Cal.App.2d 601, 609 [224 P.2d 66] : 'Reconciliation and a resumption of marital relations cancel the executory provisions of a property settlement agreement. (*Mundt* v. *Connecticut Gen. Life Ins. Co.*, 35 Cal.App.2d 416 [95 P.2d 966], and cases cited therein; 9 Cal.Jur. 827.)' '' (P. 405.)

In the previous case of *Morgan* v. *Morgan,* 106 Cal.App.2d 189 [234 P.2d 782], the court stated at page 192: "It has frequently been held, at least as to executory provisions of a property settlement agreement, that cancellation will be inferred and former rights will be restored by reconciliation and resumption of marital relations. (*Mundt* v. *Connecticut Gen. Life Ins. Co.,* 35 Cal.App.2d 416 [95 P.2d 966]; *Wells* v. *Stout,* 9 Cal. 479; *Sargent* v. *Sargent,* 106 Cal. 541 [39 P. 931]; *Lloyd Corp., Ltd.* v. *Industrial Acc. Com.,* 61 Cal. App.2d 275 [142 P.2d 754]; *Gregg* v. *Manufacturers Bldg. Corp.,* 134 Cal.App. 147 [25 P.2d 43, 1014]. See, also, 30 C.J. 1065, 1066; Nelson on Divorce, vol. 1, p. 495, § 13.14.)"

Apart from reconciliation and resumption of marital relations, there are other factors in the evidence pointing up the clear intent of the parties not only to permanently and fully resume all marital rights and obligations, but to restore the obligation of the right to support. According to plaintiff's testimony, when the parties reconciled defendant moved back into the family home; without question or discussion he resumed support of plaintiff in the same manner as he had done for the past 25 years of marriage; he paid all bills and expenses and gave plaintiff the same monies for support he had given before. Thus, it is obvious that neither party relied upon the waiver of support nor intended either to abide by it or that it should deprive her of marital support thereafter; and plaintiff having regained her marital rights, defendant having exercised his, and both having performed their marital obligations, the obligation of the husband to support his wife was revived. (*Morgan* v. *Morgan,* 106 Cal. App.2d 189 [234 P.2d 782].) Plaintiff further testified she resumed marital relations in good faith and "thought it was for good and always," and while there were no discussions between them relative to the agreement she assumed "it had all been done away with," "was all the same as it had been before," and "remained the same."

The propriety of awarding alimony in the face of a property settlement agreement waiving the same was squarely before the court in the *Morgan* and *Purdy* cases. In *Morgan* v. *Morgan,* 106 Cal.App.2d 189 [234 P.2d 782], Mrs. Morgan, under a property settlement agreement, received money and furniture, expressly waiving alimony; a reconciliation subsequently occurred. Thereafter the parties separated and a new divorce action was filed wherein she was awarded alimony and attorneys' fees. Appellant husband claimed the property settle-

ment agreement was valid and had not been cancelled by reconciliation. Holding she was entitled to alimony, the court said at page 193: "The crucial question was whether the agreement should be given prospective effect as concerned the claim and the right of Mrs. Morgan to receive support. That is the question involved on the appeal. Findings were waived. The decree, in so far as it cancels the agreement, rests upon implied findings that the parties understood that Mr. Morgan, in joining in the reconciliation and resumption of marital relations, abandoned his contractual rights of freedom from the obligations of support, and assumed anew the legal obligations of a husband; also that Mrs. Morgan abandoned her right, which was expressly given by the agreement, to live separate and apart from her husband, and assumed and was restored to the customary obligations and rights of a wife. There was ample evidence to sustain such findings. Mrs. Morgan testified she believed the reconciliation to be permanent. Mr. Morgan's declarations and conduct certainly indicated that he shared that belief. Good faith of the parties was to be presumed. It is scarcely conceivable that a reconciliation with resumption of marital relations such as the one in evidence would have been entered upon under circumstances that would have enabled the husband to refuse to support his wife and to leave her without cause at any time, and without liability or obligation to her as long as the marriage existed, or after it should be terminated by divorce. In the absence of any evidence to her express agreement continuing the freedom of the husband from liability for support it was reasonable to infer that the parties intended to resume a normal married life and the legal obligations that go with it. We may not disturb the finding that the property settlement agreement was cancelled by consent of the parties."

In *Purdy* v. *Purdy*, 138 Cal.App.2d 402 [291 P.2d 1005], the parties entered into a series of separations, agreements, and reconciliations, finally divorcing. Under the last agreement the wife received around $9,000 (for her share of the real property) and personal property, and waived alimony; the husband received the real property. The lower court awarded alimony and attorneys' fees. Said the court at page 405: "It is evident from the terms of this agreement that the parties were not then contemplating a reconciliation and . . . we cannot say that the trial court erred in drawing the inference that in view of the subsequent reconciliation, there had

been no waiver of the rights of second party to future support and attorneys' fees under a different set of circumstances.''

Nor do we believe plaintiff's retention of the family home under the executed portion of the agreement to be inequitable. Under the circumstances of the previous divorce plaintiff was willing to and did accept the family home and waive alimony, even after 25 years of marriage. However, an entirely ''different set of circumstances'' existed in the last separation resulting in divorce; not only had defendant after the reconciliation conducted himself in a manner inimical to the continuance of marital relations by frequent absences from home, intoxication and other acts, but he admittedly committed adultery. While plaintiff may have been willing to waive alimony under the circumstances of her first divorce, she obviously was not willing, nor could she be expected, to do so under the additional acts of extreme cruelty and adultery. Further, had she upon reconciliation reconveyed the family home to community status, the trial court, under the proof, could well have awarded the same to her, as well as all of the community property—including bank accounts, stocks, trust deeds, et cetera (Civ. Code, § 146, subd. (a)), and in addition, alimony for the rest of her life. Instead, no doubt taking into consideration plaintiff's retention of the family home, the trial judge not only did not award her any of the community property but limited her alimony to four years. We find defendant to have been treated fairly, particularly in light of his personal conduct. Moreover, at no time did he complain of his wife's retention of the property or ask for its reconveyance. In October 1958, defendant returned to live with plaintiff in the family home. They had no discussion relative to the property settlement agreement or the property which plaintiff had received under its terms, nor was its reconveyance to community ownership ever mentioned. It was only when plaintiff asked for alimony in the instant divorce proceeding that he asserted she still had the property; even then, he relied upon the validity of the agreement in denying there was any community property, and thus could not and did not ask for either a reconveyance of the same or reimbursement therefor. (*Morgan* v. *Morgan*, 106 Cal.App.2d 189 [234 P.2d 782].)

In both the *Morgan* and *Purdy* cases, *supra*, the wife retained property she had acquired under the executed portions of the prior agreement; in neither did this prevent the court from awarding alimony. In *Purdy* v. *Purdy*, 138 Cal.App.2d 402 [291 P.2d 1005], she kept personal property and approxi-

mately $9,000 received by her as her share of the real property given thereunder to her husband, but the court did not permit either this or her waiver of alimony to effect future support and attorneys' fees "under a different set of circumstances." (P. 405.) In *Morgan* v. *Morgan,* 106 Cal.App.2d 189 [234 P.2d 782], Mrs. Morgan retained $1,200 and furniture and she was permitted to ask for alimony without returning the property. The court, while finding it to be of no particular worth inferred that had the property been of sufficient value further litigation concerning Mr. Morgan's possible right therein might be in order, and held "It was not necessary for Mrs. Morgan to rescind the agreement before questioning its continuing force" and that "regardless of these considerations [retention of the property], the agreement was cancelled by mutual consent, without any demand by Mr. Morgan that he be reimbursed in any manner. If he had been entitled to demand restoration he waived his right." (Pp. 193, 194.)

▇▇▇ Having held that the reconciliation operated to cancel the executory provisions of the property settlement agreement of June 20, 1958, thus reviving the obligation of the husband to support his wife and restoring her right to support, it was proper for the court upon a subsequent divorce to award alimony upon a proper showing. She testified extensively concerning her expenses, needs and lack of sufficient funds to cover them; and defendant's ability to pay was established. We find no abuse of the trial court's discretion in fixing the amount and duration of alimony and the sum for attorneys' fees, and we will not disturb the trial court's findings in that regard. (*McClellan* v. *McClellan,* 159 Cal.App.2d 225 [323 P.2d 811]; *Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1962.