**ESTATE of Don Murillo BROCKWAY, Deceased, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 13616.

United States Court of Appeals, Ninth Circuit.

Dec. 22, 1954.

George T. Altman, Beverly Hills, Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Ellis N. Slack, Cecelia H. Goetz, Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent.

Before FEE and CHAMBERS, Circuit Judges, and WALSH, District Judge.

JAMES ALGER FEE, Circuit Judge.

In 1922 there was incorporated Crown Body & Coach Corporation with 200 shares of common stock, of which Don Murillo Brockway[1] owned 100. Murillo M. Brockway, his son,[2] became an employee of Crown. In 1936 decedent acquired for Murillo the outstanding 100 shares of stock, for the purchase price of which his son subsequently reimbursed him. In the same year, decedent and Murillo entered into a written agreement to place this stock in "themselves as joint tenants." Subsequently, 550 shares of common and 950 shares of preferred stock were issued by Crown, in accordance with the contract, in the joint names.

The Tax Court, 18 T.C. 488, construed this document to create a joint tenancy, and upheld a deficiency assessment against the estate[3] based upon the transfer of his father's shares of stock to Murillo by the death.

There are three questions raised on the appeal: (a) Where the agreement contained the words:

"control and management continue under the guidance of the parties hereto, and the survivor of them, and that the parties hereto, and the survivor of them, participate in and share to the maximum the benefits resulting from their joint and several efforts,"

was the stock held in "joint tenancy" within the meaning of the Internal Revenue Code, § 811(e)?[4] (b) If the

---

1. Hereinafter called "the father" or "decedent."

2. Hereinafter called "the son" or "Murillo."

3. The estate is the petitioner here.

4. "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *. To the extent of the interest therein held as joint tenants by the decedent and any other person

stock were so held but there was an arm's length business agreement free from donative intent, was the stock includable in the gross estate? (c) Did certain obligations assumed by the son under the written agreement affect the situation?

 The contract clearly expressed the intention of the parties to create a joint tenancy in the stock. The language is that decedent and Murillo "will sell, transfer and assign unto themselves, as joint tenants, all their respective shares of stock," and that, if shares of Crown are acquired by them or either of them in the future, they or he "will transfer same to the parties hereto as joint tenants." The language quoted as to their joint efforts and survivorship has no contrary meaning. The document must be construed under California law, which requires that the intention to create such a tenancy be clear. It cannot be made more clear than here. The language of the written document and the transfer of the subsequent issues of stock into the joint names control. Some vague unexpressed intention of the parties, if it existed, could have no effect.

 The agreement contained all the incidents for the formation of a joint tenancy by California law. Such incidents are unity of interest, title, time and possession. De Witt v. City of San Francisco, 2 Cal. 289, 297; Hammond v. McArthur, 30 Cal.2d 512, 514, 183 P.2d 1. The estate must have been created by a single instrument. See Plante v. Gray, 68 Cal.App.2d 582, 157 P.2d 421. Here it was so created.

 The suggestion that there was not unity of interest because decedent was older than Murillo has no weight. There was no assurance that the son would not die first. The quoted language above, instead of indicating that no joint tenancy was intended, points to no other conclusion. Survivorship is one of the major incidents. It is said the son gave consideration in the promise to provide for his mother if he were the survivor, and in his efforts dedicated to the common interest. But the efforts of the father during his lifetime were of concern.

"Whereas, the efforts of said parties in the discharge of their said duties have successfully carried said Company through the financial crisis of the past few years and have placed it on a sound financial basis, and it is reasonable to anticipate that under their guidance the success will continue, with its resulting direct advantage to the parties hereto;"

 It is true that the voluntary conveyance to a stranger of the entire interest of a joint tenant severs the joint tenancy relation. Swan v. Walden, 156 Cal. 195, 196, 103 P. 931. But there was no provision of this instrument forbidding the conveyance. The testimony of the son could not vary the terms of the instrument. It would seem that the suggestion that power to sever must be present is an afterthought. Apparently, non-severability tends rather to strengthen the joint tenancy than otherwise.[5] Plante v. Gray, supra. The California courts have not held that severability is an essential.

The argument which is now made that some other form of tenancy would better serve the present purposes of the estate and the survivor, is two-edged. If a competent lawyer, such as he who drew the instrument, had intended to create a "tenancy in common for life, with cross remainders for life with remainder in fee to the

* * *, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: * * *." 26 U.S.C.A. § 811 (e).

5. See Sheets v. Commissioner of Internal Revenue, 8 Cir., 95 F.2d 727.

ultimate survivor," or "a tenancy in common in fee simple with an executory limitation in favor of the survivor," [6] as petitioner now suggests, the lawyer could have used appropriate language. If it be thought his testimony is competent to interpret the instrument which he actually drew, he is positive that he intended to create a joint tenancy.

There is a claim that this was an arm's length business transaction. If true, the circumstance was immaterial. The assumption of certain obligations by the son, such as the proviso that he should pay certain sums to his mother if he and she survived the father, is also immaterial.[7] It was not proven that the son had paid "an adequate and full consideration in money or money's worth" for the interest in the shares of stock owned by decedent at the time of death and received by the former in virtue of the right of survivorship.

There is no doubt that it was of great importance to the father that he should take the stock of the son by survivorship in case he outlived the latter. Obviously enough, it was also to the interest of the son to buy into a successful business in which the father already had an interest on what terms he might.

The business opportunity furnished by the father to the son and his agreement to share the management and ownership thereof constituted technical and moral consideration moving from the father for the creation of the joint tenancy with limitations upon the right to transfer and interest. The unities required by the law of the state do not compel each joint tenant to pay exactly the same amount for the interest he receives, including survivorship. The assumption of obligations by the son were for the creation of the estate set out in the instrument. This conclusion is not altered by our opinion in Hatch's Estate v. Commissioner of Internal Revenue, 9 Cir., 198 F.2d 26, 28, where it is said:

> "* * * in dealing with a tax matter we must be guided by the substance and effect of what was done. * * * This is not to say that we are to disregard the language used in a contract which may be involved, or the methods used to effect the transaction. But rather, we must consider the form and steps used in their relation to the intended and accomplished entire transaction."

The "intended and accomplished entire transaction" here, as well as the "language used in a contract" and the "methods used to effect the transaction" reflect a purpose and intent to create a joint tenancy with survivorship in either father or son.

> "In the absence of clear and convincing evidence that the parties had a contrary intent those instruments must be permitted to speak for themselves, especially in a case where a public official has relied upon them in acting to determine and protect the revenue interests of the Government." Greenwood v. Commissioner, 9 Cir., 134 F.2d 915, 921.

It is also contended that property at 4909 Sunset Boulevard was originally owned by the surviving wife and

---

6. The creation of such estates, however, may have resulted in the same tax liability here involved. See 26 U.S.C.A. § 811(c). But it is also there provided that no tax will be assessed for a transfer of an interest to take effect at death if made for good consideration.

7. § 811(e) taxes the entire value of jointly owned property except such portion as may be shown to have "originally be-

longed" to the survivor and never to have been acquired by him from the decedent for less than adequate consideration. Here, the son makes no claim that the entire property "originally belonged" to him; the consideration for which he acquired one-half the stock and a survivorship interest in the remainder is admittedly adequate.

was not acquired by her from decedent. The deed by which the property was transferred into the name of the wife alone was dated October 9, 1920. Petitioner alleged and defendant admitted that this property was held by husband and wife in joint tenancy. In the estate tax return, the parcel is described as jointly owned by them. There is no showing that the wife furnished the consideration, even though the deed was taken in her name. In a community property state, the burden on the surviving spouse to show a specific contribution to more than her share of a joint tenancy is heavy.

The Tax Court found as a fact that there was a joint tenancy and that the surviving widow had not made a contribution in excess of sixteen per cent thereto. These were questions of fact.

Affirmed.