ESTATE OF JULIA CRAWFORD HORNOR, F. RAYMOND WADLINGER AND CALEB W. HORNOR, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77153.    Filed May 24, 1961.

*George Craven, Esq.*, for the petitioner.
*Frederick A. Levy, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The respondent has determined a deficiency of $400,730.14 in the estate tax of the Estate of Julia Crawford Hornor, sometimes hereinafter referred to as Julia. The questions for determination are the correctness of the respondent's action: (1) In determining that under the provisions of section 811(c)(1)(B) of the Internal Revenue Code of 1939 [1] an amount of $954,769.74 is includible in the gross estate of Julia as representing the value of her interest in certain properties conveyed in trust during 1935 and 1936 under a deed of trust dated December 31, 1935, (2) in failing to determine that Julia's estate is entitled to a recoupment or offset against the deficiency here involved of Federal estate tax paid on the estate of Julia's prior deceased husband plus interest on such tax, (3) in failing to allow as a credit against the deficiency here involved an amount of $44,215.73 as gift tax paid by Julia on the conveyance in trust of the foregoing properties, (4) in failing to allow a credit for additional State death taxes payable on Julia's estate, and (5) in failing to allow as additional deductions the amounts of such additional attorneys' fees and expenses as may be incurred in connection with the determination of the liability of Julia's estate for Federal estate tax.

All of the facts have been stipulated and are so found.

Julia died testate and a resident of Philadelphia County, Pennsylvania, on May 29, 1954. F. Raymond Wadlinger and Caleb W. Hornor are the duly qualified and acting executors of her estate.

The Federal estate tax return of Julia's estate was filed with the district director of internal revenue at Philadelphia, Pennsylvania. In filing the return the estate did not exercise the election of having the gross estate valued as of the alternate valuation date or dates.

Julia's husband, William Macpherson Hornor, sometimes hereinafter referred to as William, died testate and a resident of Delaware County, Pennsylvania, on January 18, 1937. Julia qualified as executrix of William's estate and continued to act as such throughout the administration of it.

On December 31, 1935, Julia and William owned as tenants by the entirety 105 parcels of real estate situated in the City and County of Philadelphia, and 2 parcels of real estate situated in Delaware County, Pennsylvania. The value of the 107 parcels of real estate on the date of William's death, January 18, 1937, was $1,143,900. All of the 107 parcels were acquired by Julia and William as tenants by the entirety from William on various dates from December 19, 1925, through March 20, 1935. Most of the properties were acquired by William under the will of his mother and the remaining properties

---

[1] Unless otherwise indicated, all references to the Code are to the Code of 1939.

were purchased by him. Julia did not contribute any part of the cost of acquiring any of the 107 properties nor did she pay any valuable consideration for the conveyance of such properties by William to himself and her as tenants by the entirety.

On December 31, 1935, by a deed of trust dated the same date, Julia and William as settlors conveyed to themselves and Peter T. Hornor, one of their sons, as trustees under the deed of trust to be held for the purposes and on the terms set forth in the deed of trust the 105 parcels of real estate situated in the City and County of Philadelphia. By a deed dated December 31, 1935, Julia and William conveyed to the trustees under the deed of trust dated December 31, 1935, to be held for the purposes and on the terms set forth in the deed of trust, the two parcels of real estate situated in Delaware County, Pennsylvania. From money held by them as tenants by the entirety, Julia and William during 1936 made cash additions to the trust in the total amount of $6,066.70. That amount together with the 107 parcels of real estate of the value of $1,143,900 made a total of $1,149,966.70 in value of properties conveyed by Julia and William to the trust and held by the trustees on the date of William's death.

The deed of trust provided that the trustees were to hold, manage, invest, and reinvest the corpus or principal of the trust, collect the income, pay expenses, and distribute the net income "jointly" to Julia and William during their joint lives; upon the death of one of them to distribute the net income to the survivor for life; upon the death of the survivor to distribute one-fourth of the net income to each of their four sons for life; then to a son's appointee, or if none, to his descendants, and upon the death of the last survivor of the sons, to distribute one-fourth of the principal to the appointee of each son or his decendants. The deed of trust also contained the following provisions:

18. The Settlors hereby retain and reserve to themselves jointly but not severally the right and power to revoke and terminate the trust hereby created, in whole or in part, at any time and from time to time during their joint lives by their act alone and without the consent of or notice to the Trustees or anyone who may have an interest in the said trust and to revest in themselves the legal title to the property constituting the trust estate hereunder and to resume possession of the said property free and discharged from the trust created by this indenture and to revoke, cancel and annul this indenture.

19. On the death of either of the Settlors, who shall die first, the trust hereby created and the terms and conditions of this Indenture shall be irrevocable.

20. The Settlors hereby retain and reserve to themselves jointly but not severally the right and power, at any time and from time to time during their joint lives, by their joint act alone and without the consent of or notice to, the trustees or anyone who may have an interest in the said trust, to withdraw any or all of the property constituting the trust estate hereunder and to resume possession thereof free and discharged from the said trust and to alter, amend and modify the said trust and the terms of this indenture in any and every respect at any time and from time to time during their joint lives by their act

alone without the consent of or notice to, the Trustees or anyone who may have an interest in said trust.

Except for an amendment made on February 8, 1936, to the deed of trust and which is not material here, Julia and William never exercised any of the above-mentioned reserved joint powers.

William was born April 10, 1860, and Julia was born October 9, 1870.

The value on the date of Julia's death, May 29, 1954, of the property held in the trust was $1,394,027.94. In determining the deficiency here involved the respondent included in the gross estate of Julia as transfers made by her an amount of $954,769.74 representing 0.68490 of the foregoing value of $1,394,027.94. The 0.68490 represents the actuarial value of Julia's right to receive income for life and the principal on William's death, if she was living, in the property transferred by her and William to the trust.

Julia and William filed separate gift tax returns for 1935 in which they reported the conveyances of real estate in trust made during that year. The Commissioner determined that as a result of the conveyances Julia had made a gift the value of which was 0.43374 of the value of the property so conveyed, or $496,155.19, and Julia, with respect to such conveyances, paid gift tax for 1935 of $43,777.11 with interest thereon of $3,717.99. The Commissioner determined that the value of the gift correspondingly made by William was $228,814.32 and William, with respect to the conveyances, paid gift tax for 1935 of $11,293.29 with interest thereon of $694.49.

Julia and William filed separate gift tax returns for 1936 in which they reported the conveyances of cash in trust totaling $6,066.70 made during that year. The Commissioner determined that as a result of the conveyances Julia had made a gift of a value of $2,542.74 and with respect thereto Julia paid gift tax for 1936 of $438.62. The Commissioner determined that the value of the gift correspondingly made by William was $1,286.99 and William paid gift tax for 1936 of $164.09 with respect thereto.

The Federal estate tax return filed for the estate of William did not show as part of the gross estate the property conveyed in trust during 1935 and 1936 by William and Julia and showed no tax payable. The Commissioner determined a deficiency of $292,339.39 in the estate tax of the estate of William and sent the estate a notice of deficiency dated April 4, 1940. In determining the deficiency the Commissioner included in the gross estate of William at a value of $1,149,966.70 all of the property (real estate and cash) conveyed by Julia and William under the deed of trust. The Commissioner determined that the property was includible in the gross estate under the

provisions of section 302 (c) and (d) of the Revenue Act of 1926 as a transfer made in contemplation of death, as a transfer reserving income for life and as a transfer which was subject to change at the time of death through the exercise of a power by Julia and William jointly to alter, revoke, or amend the transfer.

Thereafter William's estate timely filed with the Board of Tax Appeals a petition praying for a reversal of the Commissioner's determination. With the exception of an item of cash in the amount of $885 conveyed to the trust on May 15, 1936, the Board in *Estate of William Macpherson Hornor*, 44 B.T.A. 1136 (1941), held that the full value of the property conveyed in trust, $1,149,081.70, was includible in the gross estate of William. On September 19, 1941, the Board entered its decision determining a deficiency of $244,248 in the estate tax of William's estate.

The deficiency determined by the Board less a credit of $22,830.13 for State inheritance tax, or a net deficiency of $221,417.87, was paid from funds of the trust on or about November 7, 1941, together with interest thereon of $46,776.82. Of the tax so paid, $213,157.96 was arrived at by including in the gross estate of William the property conveyed in trust of the value of $1,149,081.70.

William's estate timely filed with the Court of Appeals for the Third Circuit a petition for review of the decision of the Board. The Court of Appeals in *Hornor's Estate* v. *Commissioner*, 130 F. 2d 649 (C.A. 3, 1942), held that the full value of the property conveyed in trust was includible in the gross estate of William and sustained the deficiency determined by the Board.

The trust was created after William had been advised by an attorney that it would effect a tax saving and that it would provide protection for the sons. Respecting the conveyance of the property in trust, Julia's gift tax return for 1935 contained the following statement:

The motive for this conveyance was the avoidance of the estate tax or gift tax to which the transfer of the same property from Julia C. Hornor would be subject if she survived her husband, William Macpherson Hornor, and did not die within five years after his death.

Julia's will contains no provisions authorizing the payment from her testamentary estate of estate or inheritance tax on any property transferred by her during her lifetime which may be includible in her gross estate for estate or inheritance tax purposes.

The petitioner takes the position that the transfers of property in trust under the deed of trust of December 31, 1935, were made wholly by William, that accordingly no part of the property is includible in Julia's gross estate, and that consequently the respondent erred in including in her gross estate as transfers within the meaning of

342

section 811(c)(1)(B) of the Code [2] an amount of $954,769.74, representing 0.68490 of the value of the property held in the trust, $1,394,-027.94, on the date of her death, May 29, 1954. In support of its position the petitioner contends that the decisions of the Board of Tax Appeals and the Court of Appeals in the case of William's estate are controlling and determinative here and require a holding that no part of the trust property is includible in the gross estate of Julia as a transfer made by her.

Pertinent portions of the opinion of the Board of Tax Appeals in the case of William's estate are as follows:

The petitioner contests the Commissioner's inclusion in the gross estate of the value of the real properties held in trust after the transfer in 1935 by decedent and his wife as tenants by the entirety. Decedent had originally acquired the properties individually and had then transferred them into entirety ownership. The propriety of the inclusion in the gross estate seems clear upon any one of several grounds.

The Commissioner has held that the transfer by the decedent to the trust in 1935 was made in contemplation of death. The transfer was less than two years before the death, and the statute, section 302(c), Revenue Act of 1926, expressly presumes that it was made in contemplation of death "unless shown to the contrary." The evidence fails to show to the contrary, and for this reason, if for no other, the property transferred is within the gross estate.

Had the property been held directly by the decedent and his wife as tenants by the entirety, it would have been within the gross estate by virtue of section 302(e) of the Revenue Act of 1926, as an interest in property "held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse." *Tyler* v. *United States*, 281 U.S. 497; *United States* v. *Jacobs*, 306 U.S. 363. The petitioner seeks to escape this provision of the statute by reason of the intervention of the trust set up in 1935. But, other than the creation of a purely legalistic title in the spouses and their son as trustees instead of the spouses alone as owners, the trust, for present purposes, accomplished nothing. Until the first decedent died, it was revocable; and until both settlors died, the income was distributable to them. These reservations deprived the trust of substance sufficient to withhold it from the gross estate. A trust created by joint tenants or tenants by the entirety has no greater force to keep the property from the gross estate of one of the settlors than would a similar trust created by an individual. Revocability and reservation of income for life leave the property in the settlor's gross estate as effectively in one case as in the

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; \* \* \*

other. Property held in a revocable trust is within the gross estate, *Porter* v. *Commissioner*, 288 U.S. 436; *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339; *Chase National Bank* v. *United States*, 278 U.S. 327. So is property of which the decedent has a possibility of reversion, *Helvering* v. *Hallock*, 309 U.S. 106.

All of these considerations unite to require that the property held in trust as the result of the transfer by decedent and his wife as tenants by the entirety be included within his gross estate. The Commissioner's determination is sustained.

2. Three items were included by the Commissioner in the gross estate, of which one, amounting to $885, should, it is stipulated, be eliminated from the gross estate.

a. The amount of $4,900 was held in the trustees' bank account, having been transferred by decedent and his wife from their entirety bank account, where it had been deposited upon its receipt by them as rents from the real property held in the name of the trust. The petitioner contends that the amount may not be included in the gross estate because it belonged to the trustees. The answer is the same as that which requires the real property to be included in the gross estate, i.e., that the trust may not be recognized as providing insulation against the tax.

b. This is likewise the decision in respect of the $281.70 which was received by the decedent and his wife from the fire insurance company as a distribution of earnings attributable to the deposited premiums. The petitioner's contention, that because the insured properties were owned by the trust, the distributions may not be attributed to the husband and wife so as to be included within the husband's gross estate, must be rejected.

The determination as to the two items is sustained.

Pertinent portions of the opinion of the Court of Appeals in the case of William's estate affirming the Board are as follows:

This seemingly complicated fact situation becomes clear upon examination. The first question presented for our determination is whether the value of the property held in trust following the execution of the indenture of December 31, 1935 should be included in the gross estate of the decedent. The Board of Tax Appeals upheld the contention of the Commissioner that the transfer by the decedent to the trust was made in contemplation of death; that therefore Section 302(c) of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by Section 803 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int. Rev. Code § 811(c), applies. The section as amended provides that any transfer of a material part of his property by a decedent "* * * in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without * * * [an adequate and full consideration in money or money's worth], shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title [subchapter]." The decedent was 76 years of age when he died. The statute is explicit and it was not shown that the transfer to the trust of December 31, 1935, was not made in contemplation of death, as provided by the statute. The conclusion of the Board, however, seems to us to disregard the fact that transfers of many of the properties subsequently subject to the trust were made by the decedent to himself and his wife as tenants by the entirety prior to the two year limitation imposed by Section 302(c). We think it unnecessary to discuss the question of whether or not any transfer by the decedent was made in contemplation of death, for the transfer to the trustees by the indenture of December 31, 1935, was squarely within the provisions of section 302(e) of the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.

Code § 811(e)[1] and, therefore, the value of the properties held in trust following the transfer of 1935 was properly includible within the estate of the decedent.

As to the other items referred to in this opinion, beginning with the second, viz., checks for $5,181.70, turned over to the trustees by the decedent and his wife to be held in trust under the deed of December 31, 1935, and concluding with the last, the house and lot on Bryn Mawr Avenue, we sustain the decision of the Board, which included these items in the gross estate of the decedent. We will not discuss these items separately. All of them are includible within the gross estate of the decedent since every conveyance or transfer made by the decedent to his wife and himself by entireties with which we are here concerned was made without legal consideration moving from the wife. The provisions of Section 302(e) of the Act are applicable to these items.

[1] Section 302(e) of the Revenue Act of 1926 provides:

To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants; * * *

The foregoing shows that the end result of the litigation in the case of the estate of William was that the Court of Appeals, after concluding that it was unnecessary to decide the contemplation of death question, and after observing that there was no consideration moving from Julia to William for his conveyance of the property from himself as sole owner to himself and Julia as tenants by the entirety, disregarded, for Federal estate tax purposes, their conveyance of the property in trust and held that the entire property was includible in William's gross estate under the provisions of section 302(e) of the Revenue Act of 1926 as property held as tenants by the entirety by William and Julia at the time of William's death. Since the Court of Appeals concluded that the provisions of subdivision (e) of section 302 were applicable and required the inclusion of the property in William's gross estate, the court obviously deemed it unnecessary to consider whether other subdivisions of the section relating to transfers of property in trust also were applicable. The Court of Appeals having made the foregoing disposition of the case, we think it is clear that it did not determine, as petitioner contends, that the transfer of the property in trust was made wholly by William and that Julia transferred nothing.

We further think it is also clear that the Court of Appeals in the case of William's estate recognized that the property was held in trust but in holding that the trust was inoperative to avoid the application of

section 302 (e), it did not, and did not purport to, hold that the trust or the conveyance of the property thereto was invalid. Such being the case and since neither of the parties here contend otherwise, we conclude for present purposes that the trust was a validly created and subsisting trust at all times material herein.

Concededly a tenant by the entirety has a right of survivorship and since the Court of Appeals has held for Federal estate tax purposes that at the time of the death of William he and Julia held as tenants by the entirety the property they theretofore had conveyed to trust, we think that for present purposes Julia is to be regarded as having had the right of survivorship in the property immediately preceding William's death. However, the deed of trust to which Julia was a party provided that on the death of the first of William and Julia the trust was to become irrevocable. As a consequence William's death not only terminated the tenancy by the entirety but also rendered the trust irrevocable and thereby terminated Julia's right of survivorship. Since Julia had joined William in the creation of the trust and in making the conveyances of property thereto, we think that it must be concluded that she made a transfer of property by "trust or otherwise" under which she retained for her life the right to income from the property within the meaning of section 811 (c) (1) (B) of the Code.

The petitioner contends that if Julia made a transfer, she transferred only the value of the right to receive the corpus of the trust on her death following the death of William and that such value did not exceed 0.43374 of $1,149,966.70, the total value of the property conveyed in trust by William and Julia and held in trust at the time of William's death. The fraction, 0.43374, represents the stipulated factor for the present worth of $1 due at the death of the younger of two persons, ages 65 and 76, provided the younger survives the older. The respondent contends that his action in including in the gross estate of Julia the amount of $954,769.74, representing 0.68490 of $1,394,-027.94, the value on the date of the death of Julia of the property conveyed by her and William in trust, was correct and proper and should be sustained. The fraction, 0.68490, represents the stipulated actuarial value of the right of Julia to receive income from the trust for life and the principal of the trust on William's death, if she was living.

By the deed of trust William and Julia on December 31, 1935, created a revocable trust with respect to property held by them as tenants by the entirety. By the terms of the deed, the trust was to become irrevocable on the death of the first of them to die. William died on January 18, 1937, and on that date the trust became irrevocable. Julia died on May 29, 1954. For the purpose of determining the amount includible in the gross estate of Julia as the value of her interest in the property transferred to trust, we think the situation should be regarded as though she and William on January 18, 1937, created an irrevocable

trust with respect to such property and that the rule laid down by us in *Estate of A. Carl Borner*, 25 T.C. 584, should be applied.

In the *Borner* case a husband and wife during 1938 transferred to an irrevocable trust certain stock and securities owned by them as tenants by the entirety, all the cost of which had been furnished by the husband, and having a value of $85,140.41 at the time of the transfer. The net income of the trust was to be paid to the husband and wife in equal amounts during their joint lives and upon the death of one, all of the net income was to be paid to the survivor for the remainder of his or her life. Upon the death of the survivor the income and principal of the trust were to go to other persons. The transfer was made in contemplation of death within the meaning of section 811(c) of the Code. The wife survived the husband who died in 1947. On the optional valuation date elected by the husband's estate the stock and securities which had been transferred in trust had a value of $102,818.31. The respondent determined that the foregoing amount was includible in full in the gross estate of the husband. The husband's estate contended that only one-half of the value of the property was includible in his gross estate. In holding for the husband's estate we said:

> Section 811(c) of the 1939 Internal Revenue Code includes in the gross estate the value of any property "To the extent of any interest therein * * * of which * * * [decedent] has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property * * *." Petitioner makes the contention that decedent's interest in the property transferred to the trust extended only to one-half of such property. He relies upon *Estate of Sullivan* v. *Commissioner*, 175 F. 2d 657, reversing 10 T.C. 961, and *Estate of Brockway* v. *Commissioner*, 219 F. 2d 400, affirming on other issues 18 T.C. 488. Both of these cases involved transfers of property held by a husband and wife as joint tenants to a third party, and the issue common to both cases was whether such transfer, being in contemplation of death, brought into the husband's gross estate, at death, the entire value of the property so transferred, or only one-half. In *Estate of Sullivan, supra*, the Ninth Circuit, reversing the Tax Court, held that only one-half the property transferred by the decedent was includible in his gross estate. Decedent, under the law of California, possessed only a half interest in the jointly held property, and therefore, this was all he was able to convey. We adopted this analysis in *Estate of Brockway, supra*, as a correct interpretation of section 811(c).
>
> We agree with petitioner that the rationale of the *Sullivan* and *Brockway* cases is applicable here. It is true that these cases involved joint tenancies, while here the property transferred was held in a tenancy by the entireties. Differences do exist between the two estates but such differences are not sufficient to compel unlike tax results under the provisions of section 811(c). The only difference is a tenancy by the entireties is based on the ancient common law fiction that husband and wife are one, and the right of survivorship cannot be destroyed without mutual consent, while in a joint tenancy one tenant, by transferring, can destroy the survivorship right. We conclude as a

practical matter, the tenancy by entirety and joint tenancies are so much alike that the rule applied in the joint tenancy cases should be applied here where the tenancies are by the entirety, which means each tenant owns one-half. This conclusion does not rest upon any peculiarities of Pennsylvania property law. Pennsylvania law, while determinative of the nature of property rights in joint tenancies and tenancies by the entireties, cannot control the application of the Federal tax statutes to such property rights.

We are fortified in our conclusion that practicalities should govern by a fairly recent opinion of the Supreme Court of Pennsylvania. In *In re Zipperlein's Estate*, 367 Pa. 622, 80 A. 2d 817, the Pennsylvania court had before it a case where there was a devise of property to a decedent's stepson and his wife and the question was as to the rate of inheritance tax on the value each received. The Pennsylvania court recognized the distinction between estates by entirety and joint estates but applied its tax law in a practical manner saying:

"in considering, from a practical standpoint, the question as to the proper tax to be imposed under the 1919 Act, the stepson and his wife must be regarded as each having a one-half interest in the bequest, with the result that the tax on his half share will be at the rate of 2% and the tax on her half share at the rate of 10%."

Respondent relies upon *Estate of William MacPherson Hornor*, 44 B.T.A. 1136, affd. 130 F. 2d 649, for the proposition that the entire value of property transferred by a husband and wife, holding as tenants by the entireties, to an irrevocable trust, with income reserved for their joint lives, then for the life of the survivor, was includible in the decedent's gross estate. We believe that case is distinguishable on its fact. In the *Hornor* case, the trust set up by the tenants by the entireties not only reserved, as here, the income for their joint lives and the life of the survivor, but also left in the hands of the settlors a joint power of revocation, modification, and withdrawal exercisable during their joint lives. In the present case, the trust is irrevocable, and without powers of modification, and therefore we do not regard the *Hornor* case as controlling.

Applying the rule of the *Borner* case we hold that only one-half of the value, $1,394,027.64, of the property held in the trust on the date of the death of Julia, or $697,013.82, was includible in her gross estate.

The petitioner takes the position that it was held in the case of the estate of William that the property held in the trust at the time of his death was includible in his gross estate "as a transfer by him" to the trust and that the only ground for sustaining the inclusion in the gross estate of Julia of any part of the property held in the trust at the time of her death is that the holding in the case of William's estate was erroneous. The petitioner, resting on the foregoing position and relying on *Bull* v. *United States*, 295 U.S. 247 (1935), and *Stone* v. *White*, 301 U.S. 532 (1937), among others, contends that if estate tax is found to be due in the instant case by reason of the inclusion in the gross estate of Julia of any part of the property which was included in the gross estate of William, it must be concluded that the tax collected by reason of the inclusion of such property in William's gross estate was collected in error and that such tax plus interest should be allowed by way of equitable recoupment as a credit against the de-

ficiency here in controversy. Aside from urging that the situation presented does not afford a basis for the application of the principle of equitable recoupment, the respondent, relying on *Rothensies* v. *Electric Battery Co.*, 329 U.S. 296 (1946), and *Commissioner* v. *Gooch Co.*, 320 U.S. 418 (1943), among others, contends we are without jurisdiction to apply the principle of equitable recoupment.

The petitioner has rested its contention on what appears to have been a misapprehension as to the holding of the Court of Appeals in the case of William's estate. As heretofore pointed out that court which was the last tribunal to adjudicate the matter and the decision of which became final many years ago, did not hold that the value of the property held in the trust at the time of the death of William was includible in his gross estate on the ground that he had made a transfer of the property to the trust prior to his death but, on the contrary, held that such value was includible in his gross estate on the ground that the property was held by him and Julia as tenants by the entirety at the time of his death. Such being the situation we do not reach the question of whether we have jurisdiction to apply the principle of equitable recoupment here and it is unnecessary to decide it.

The petitioner contends that if it is determined that any portion of the property transferred to the trust is includible in the gross estate of Julia as a transfer made by her, then her estate is entitled to credit for gift tax paid by her with respect to such portion and also is entitled to credit on account of additional death taxes payable on her estate. The respondent concedes on brief that if it is held that any portion of the property transferred to the trust is includible in the gross estate of Julia, then her estate is entitled to a credit for gift tax paid by her to be computed according to the provisions of sections 813(a)(2) and 936(b) of the Code of 1939 and a credit for State death taxes in accordance with the provisions of section 813(b) of the Code of 1939. Since we have held above that a portion of the property transferred to trust is includible in the gross estate of Julia, the concessions of the respondent will be given effect in a recomputation of the deficiency under Rule 50.

Since no evidence was submitted with respect to, and the parties make no mention on brief of, the issue relating to the respondent's failure in determining the deficiency to allow as deductions the amounts of such additional attorneys' fees and expenses as may be incurred in connection with the determination of the estate tax liability of Julia's estate, the parties will agree on the amount deductible for such purposes, file a stipulation as to such amount, and give effect thereto in their recomputations of the deficiency which they will file under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MULRONEY, *J.*, concurring: The sole inquiry in this case is the value of the property that is to be included in Julia's estate under section 811(c) when she died in 1954. The fact that the value of some or all of the same property was included in William's estate under another statute (sec. 811(e), not here involved), when he died nearly 20 years earlier, is of no consequence. Section 811(c) reaches the value of property transferred by a decedent "at any time" in which the decedent retained the life income. Here we have property which at the time of Julia's death was held in an irrevocable trust whereby she had the right to income for life. Julia had transferred this property to the trust so the statute clearly applies.

The next inquiry is as to the amount of value that is to be included. The statute provides it is the value of the property to the "extent of any interest therein of which the decedent [Julia] has at any time made a transfer" to the trust. The extent of the interest she transferred was a joint tenancy interest. This is a one-half interest under the rule of *Estate of A. Carl Borner*, 25 T.C. 584, *Sullivan's Estate* v. *Commissioner*, 175 F. 2d 657, and *Brockway's Estate* v. *Commissioner*, 219 F. 2d 400. No inquiry is made or need be made under section 811(c) as to which joint owner furnished the consideration for property. That inquiry is pertinent only under section 811(e) where, at the time of death, decedent was a joint owner. The *William Macpherson Hornor* case merely held the decedent was actually a joint owner, and a transfer that remained revocable up until his death was, for tax purposes, ineffectual to change his interest from what it was before the transfer. This holding rendered the entire estate taxable under section 811(e) upon proof of his furnishing the consideration for the property. A similar holding cannot be made here for the trust was made irrevocable *before Julia died* upon the happening of an event. No one contends Julia at the time of her death owned property in joint ownership. We have a different statute and in effect a different trust instrument than the statute and trust instrument involved in the *William Macpherson Hornor* case.

The transfer was not complete when made to a revocable trust, which is the full force of the holding in the *William Macpherson Hornor* case, but it was made complete before Julia died by the happening of an event that rendered the trust irrevocable, namely, William's death. The interest in property which a joint owner conveys by a joint conveyance is the same as if the joint owners were tenants in common. *Sullivan's Estate* v. *Commissioner, supra*. Julia's conveyance to the trust, which became irrevocable many years before her death, brought into the trust one-half of the corpus and that is the measure of the inclusion of value under section 811(c).

FORRESTER, *J.*, agrees with this concurring opinion.

**350**

MURDOCK, *J.*, dissenting: The revenue laws and Codes, including the Revenue Act of 1926, expressly provide that property held by husband and wife as tenants by the entirety is the property of and includible in the estate of the spouse to whom it originally belonged and not the property of or includible in the estate of the spouse who received his or her interest therein without paying adequate consideration therefor. Julia's husband was the original owner of the property here in question, and Julia never paid any consideration for her interest therein. All of the property transferred to this valid trust was properly held taxable for estate tax purposes as the property of the husband.

The identical transfer in trust that required the inclusion of the entire corpus of this trust in the gross estate of the husband is now relied upon in the majority opinion for the inclusion of a portion thereof in the gross estate of the wife. The property was in that valid trust at the time it was taxed to the husband's estate and it continued to be in that trust during Julia's life. Meanwhile, it did not belong to her and she had no control over it. It is inconsistent with express statutory provisions to conclude in one case that Julia transferred nothing to the trust and now to hold that she transferred something of great value to the trust for estate tax purposes.

The situation would be entirely different, of course, if the property had not been placed in trust; if Julia, as survivor, had come into ownership of the property upon the death of her husband; and if Julia had then made a testamentary disposition of the property.

RAUM, BRUCE, DRENNEN, and SCOTT, *JJ.*, agree with this dissent.