ESTATE OF IDA JARVIS PYLE, ROBERT M. PYLE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79523. Filed September 14, 1961.

*Arthur L. Nims III, Esq.*, for the petitioner.
*Sheldon Seevak, Esq.*, for the respondent.

### OPINION.

FAY, *Judge:* The Commissioner has determined a deficiency of $19,504.46 in estate tax.

The only issue to be decided is whether the proceeds of a life insurance policy owned by the decedent, Ida Jarvis Pyle (hereinafter referred to as Ida), on the life of her husband, Wallace Pyle (hereinafter referred to as Wallace), which proceeds on the death of Wallace were left with the insurance company under a settlement option executed by Ida prior to Wallace's death, are includible in the gross estate of Ida.

All the facts have been stipulated, are so found, and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below.

Ida died testate on June 3, 1956. She was the widow of Wallace and was domiciled in the State of New Jersey as of the date of her death. Robert M. Pyle is the duly qualified executor of Ida's estate. The estate tax return of Ida was filed with the district director of internal revenue at Newark, New Jersey.

In 1935 Ida made application to the Prudential Insurance Company of America (hereinafter referred to as the company), for an insurance policy in the amount of $30,000 on the life of Wallace. Policy No. 8885292 (hereinafter referred to as the policy) was issued by the company on April 27, 1935, and was made payable upon the death of Wallace—

to IDA J. PYLE, BENEFICIARY, WIFE OF THE INSURED, IF LIVING, OTHERWISE IN EQUAL SHARES TO SUCH OF ROBERT M. PYLE, HELEN J. PYLE AND BARBARA PYLE, SON AND DAUGHTERS, RESPECTIVELY, OF THE INSURED, AS MAY BE LIVING, IF ANY, BENEFICIARIES, OTHERWISE TO THE EXECUTORS OR ADMINISTRATORS OF THE LAST SURVIVOR OF SAID BENEFICIARIES.

If there be no Beneficiary living at the death of the Insured the proceeds of this Policy shall be payable to the executors, administrators or assigns of the Insured, unless otherwise provided in the Policy. The right to change the Beneficiary has —— been reserved.

Attached to and made a part of this policy was a rider dated April 27, 1935, which provided that:

All rights, benefits and advantages specifically given to the Insured by the terms of this Policy or which, except for the provisions of this Rider, and except for nonage, if the Insured be a minor, might be exercised by the Insured, shall belong to and may be exercised by IDA J. PYLE, WIFE OF THE INSURED, HER EXECUTORS, ADMINISTRATORS OR ASSIGNS, instead of the Insured. * * *

The parties agree that as of the date of issuance of the policy Ida alone possessed the incidents of ownership therein, including the right to assign the policy, the right to borrow from the Company on the security of the policy, the right to surrender the policy for its net cash value, and the right to change both the mode of settlement of the policy and/or the beneficiaries.

At the request of Ida, a rider dated May 23, 1935, was attached to and made a party of the policy. The rider provided as follows:

If this Policy matures by death, the proceeds shall be payable as herein provided.

1. If Ida J. Pyle, Beneficiary, wife of the Insured, survives the Insured, the proceeds shall be held by the Company in accordance with Option 3 as governed by the Provisions as to Modes of Settlement contained in this Policy, without the right of withdrawal.

2. At the death of the survivor of the Insured and his said wife, the proceeds shall be payable as provided in Paragraph 3 in equal shares to such of Robert M. Pyle, Helen J. Pyle and Barbara Pyle, Beneficiaries, children of the Insured, as may be living, if any, otherwise in one sum to the executors, administrators or assigns of the survivor of the Insured and his said wife.

3. Any amount becoming payable to any of said children as provided in Paragraph 2 shall be held by the Company in accordance with said Option 3 as governed by said Provisions as to Modes of Settlement, without the right of withdrawal. Such Beneficiary may, after he or she has attained fifty years of age, elect that such amount be paid to such Beneficiary in monthly instalments in accordance with Option 2 as governed by said Provisions as to Modes of Settlement, with payments certain for twenty years.

4. If any of said children dies while any amount payable to such Beneficiary remains under said Option 3 or while any instalments certain payable to such Beneficiary remain unpaid, such amount, or the commuted value of such unpaid instalments certain, as the case may be, shall be paid in one sum in equal shares to such of said children as may be living, if any, otherwise to the executors, administrators or assigns of the survivor of said children.

5. Interest at the effective rate of 3% per annum on any amount held under said Option 3 shall be paid monthly if each payment amounts to at least $10, otherwise the Company reserves the right to make payment in such manner, quarterly or semiannually, as will provide payments of the least excess over $10. Each payment of interest and of any dividend shall be made on its due date to said wife, if living on such due date, otherwise to the Beneficiary to whom such amount became payable if then living.

Under Option 3 the proceeds of the policy were to be left with the company and the company agreed to pay, so long as the proceeds remained with them, interest at the effective rate of 3 percent per annum, together with dividends, if any. Until the policy matured, Ida was free to make any change in the mode of settlement or in the designation of beneficiaries. Furthermore, her right to borrow on the policy or to surrender it for its net cash value remained in effect.

Wallace died testate on June 10, 1948. At the time of his death he was domiciled in the State of New Jersey. The policy was listed in Schedule D of Wallace's estate tax return with a stated value of $17,388.23. The aforesaid amount was that portion of the proceeds that bore the same ratio to the total proceeds as the amount of premiums paid by Wallace after January 10, 1941, bore to the total premiums paid. Upon audit of the return, the stated value of the policy was reduced to $17,341.97.

Following the death of Wallace, Ida surrendered the policy to the company to make settlement of the proceeds on the terms and conditions provided in the "Beneficiary Provisions" and "Provisions as to Modes of Settlement at Maturity" which were a part of said policy and effective at the maturity of said policy. In accordance with the terms of the policy the proceeds were left with the company and the company agreed to pay Ida interest at the effective rate of 3 percent per annum, together with dividends, if any, so long as the proceeds remained with the company. Since Ida had relinquished her right of withdrawal under the rider executed by her on May 23, 1935, the company was required under the option to pay Ida 3 percent interest on the retained proceeds during the remainder of her lifetime.

Following Ida's death in 1956, the estate tax return made reference to but did not schedule as an item includible in her gross estate the proceeds of the policy on Wallace's life. The Commissioner thereafter determined that the value of Ida's interest in the proceeds of the policy should be included in her gross estate. This determination was based upon the assumption that Ida owned the policy and under the mode of settlement selected by her retained a life interest in the proceeds left with the company. While the Commissioner in the deficiency notice did not refer specifically to any section of the Internal Revenue Code of 1954 as controlling, on brief he has seen fit to predicate his case upon section 2036 of the 1954 Code.[1]

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

The petitioner's argument in defense of excludibility is that the death of Wallace brought about the complete shifting of the economic benefits of the property (proceeds) so as to constitute a taxable transfer and, therefore, the proceeds, once having been transferred, could not be the subject of a lifetime transfer by Ida.

Under section 2036 of the 1954 Code, a decedent's gross estate will include property of which the decedent has at any time made a transfer whereby he has retained for his life the possession, enjoyment, or right to income therefrom. The question in this case then becomes, did Ida make a transfer of property under which she retained a life interest?

Ida, as owner and principal beneficiary of the policy, had vested rights both in the proceeds and in the policy itself, which rights could not be divested save by the acts of Ida herself. Prior to the maturity of the policy, Ida, in exercise of her vested rights, made a revocable election with the company with respect to the manner in which the proceeds were to be paid following the death of Wallace. The election being revocable until the death of Wallace, any transfers contemplated or to be effected by the election were by definition inchoate. However, the fact that transfers may be inchoate when originally made does not preclude them from being perfected at some later date. This was precisely the situation here. When Wallace's death terminated Ida's right to revoke the settlement option (or at least we so assume), the transfers were divested of their contingent quality and became completed in the eyes of the law as of that moment. Cf. *Estate of Julia Crawford Hornor*, 36 T.C. 337 (1961); *Adele F. Goodman*, 4 T.C. 191 (1944), affd. 156 F. 2d 218, (C.A. 2, 1946).

The petitioner's contention that the death of Wallace brought about the shifting of the proceeds, and such proceeds having been transferred could not be transferred again by Ida, ignores the obvious. The death of Wallace did not bring about the transfer—it merely caused an earlier transfer to become perfected. Wallace did not own the policy nor could he have effected a transfer of the proceeds during his lifetime or upon his death. Ida was the owner of the proceeds and the policy, and it was her act and not the insured's death which directed the manner in which the funds were to be handled. It should be noted at this point that a portion of the proceeds of the policy was included in Wallace's gross estate only because he had paid a portion of the premiums on the policy, a test which is no longer applicable to persons dying after August 16, 1954. Sec. 2042, I.R.C. 1954.

Accordingly, we hold that Ida made a transfer of property under which she retained for her life the right to income therefrom and, therefore, the value of such property is includible in her gross estate under the provisions of section 2036 of the Internal Revenue Code of 1954.

Petitioner asserts upon brief that to include the proceeds in the gross estate would result in a direct tax upon the proceeds without apportionment, an act forbidden by article I, section 2, and article I, section 9, of the Constitution. This issue was not raised by the pleadings and for that reason is not before us for consideration. *Calvert Iron Works, Inc.*, 26 T.C. 770, 781 (1956).

The parties have stipulated that the petitioner is entitled to certain deductions and credits in addition to those originally allowed by the Commissioner.

*Decision will be entered under Rule 50.*